**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**MAR 29 2005**

**PATRICK FISHER**
**Clerk**

PUBLISH

## UNITED STATES COURT OF APPEALS

## TENTH CIRCUIT

NESTOR CHAVEZ,

     Plaintiff - Appellant,

v.

CITY OF ALBUQUERQUE; GERALD
GALVIN, individually and in his official
capacity as Chief of Police of the City of
Albuquerque; ANDREW LEHOCKEY,
individually and in his offical capacity as
Police Officer of the Albuquerque Police
Department,

     Defendants - Appellees.

No. 03-2195

---

**Appeal from the United States District Court**
**for the District of New Mexico**
**(D.C. No. CIV-00-307 WJ/LAM)**

---

Dennis W. Montoya, Montoya Law, Inc., Albuquerque, New Mexico, for Plaintiff-
Appellant.

Luis E. Robles, Robles, Rael & Anaya, P.C., Albuquerque, New Mexico, for Defendant-
Appellee Andrew Lehockey (Kathryn Levy, Deputy City Attorney, for Defendant-
Appellee City of Albuquerque, with him on the brief).

---

Before **LUCERO** and **TYMKOVICH**, Circuit Judges, and **BLACKBURN**, District Judge.[*]

---

**BLACKBURN**, District Judge.

---

Plaintiff-Appellant Nestor Chávez contends that the district court erred in dismissing his jury verdict as a sanction for perjuring himself during discovery. Finding no error in that decision, or on any other basis urged on appeal, we affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

At 3:40 a.m., on the morning of February 16, 1998, officer Donald Piatt of the Albuquerque Police Department discovered Chávez parked alone in his car in a lot at Bullhead Park, which was closed at that hour. Chávez told Piatt he did not have a driver's license or other identification, but identified himself as "Jason Garcia" and said that his birthday was March 27, 1975. Consulting his on-board computer database, Piatt discovered a violent gang member alert for a "Lewis Garcia" whose date of birth matched the one Chávez had given. During this time, Piatt observed that Chávez was sweating heavily, although the night was cold, and appeared extremely nervous. Piatt called for backup.

When Officer Gary Barboa arrived, he and Piatt approached the car and ordered

---

[*] The Honorable Robert E. Blackburn, United States District Judge for the District of Colorado, sitting by designation.

Chávez to step out. Rather than complying, Chávez locked the car door and attempted to start the car. Piatt broke out the driver's side window with his flashlight and sprayed Chávez with mace. Nevertheless, Chávez was able to start the car and drive off. During the ensuing chase, Chávez flattened three of the car's tires after unsuccessfully negotiating a turn, but continued on. While in pursuit, Piatt and Barboa broadcast a description of Chávez, his vehicle, and the direction he was headed over their police radio.

Among the officers who heard these dispatches was Defendant-Appellee Andrew Lehockey. After Chávez crashed his car through a chain-link fence and drove off across the Puerto Del Sol golf course, Lehockey was among the officers who responded to set up a perimeter. Chávez's car was discovered abandoned at a nearby intersection. A box of ammunition was found in the car. Eight rounds were missing from the box.

Meanwhile, a local resident called 911 to report that a man matching Chávez's description had just broken into her apartment near where the car had been abandoned. Soon thereafter, two officers spotted a man matching Chávez's description running south from the location of the break-in through an open field toward Gibson Boulevard. (*Id*., Vo1. 3 at 309 & Vol. 4 at 465-466.)

Hearing this information broadcast over the police radio, Lehockey began driving down Gibson Boulevard, where he spotted Chávez running in the eastbound lane of traffic. He stopped, exited his car with his police service dog, Bart, and gave a loud K-9

warning.[1]  When Chávez did not stop, Lehockey released Bart, who bit Chávez on the left ankle.  Chávez removed the dog from his leg as Lehockey approached him with his gun drawn and ordered him to put his hands in the air.  Although Chávez complied, Lehockey directed Bart to bite him a second time.  Bart maintained his hold on Chávez until he complied with directions to lay prone on the ground and was taken into custody.

Chávez subsequently sued Lehockey and the City of Albuquerque under 42 U.S.C. § 1983, claiming use of excessive force to effectuate his arrest.  Throughout discovery, Chávez steadfastly maintained that he was not the suspect police had been chasing.  Both in his sworn answers to interrogatories and in his sworn deposition testimony, Chávez insisted that he had simply been walking to a friend's house after an evening playing bingo when he had encountered Lehockey.  Nevertheless, when Chávez testified at trial, he finally admitted on cross-examination that he, in fact, was the suspect police were seeking that morning.

The district court took Lehockey's motion for judgment as a matter of law under advisement and sent the case to the jury, which returned a verdict in favor of Chávez on his claim of excessive force and awarded him $1.00 in nominal damages.  At the district court's urging, Lehockey subsequently submitted his Rule 50 motion in writing, arguing that the case should be dismissed as a sanction for Chávez's admitted perjury, or

---

[1]  Although he initially claimed that Lehockey released the dog without any warning, Chávez ultimately admitted that he heard words to the effect of "Freeze!" or "Don't move!"  (Aplt. App., Vol. 4 at 381.)

alternately, that Lehockey was entitled to qualified immunity. The district court granted the motion on the first basis. This appeal followed.

## II. APPELLATE JURISDICTION

At oral argument, Chávez's counsel suggested that we may lack jurisdiction over the district court's sanctions order. Although we generally do not consider issues raised for the first time at oral argument, *Durham v. Xerox Corp.*, 18 F.3d 836, 841 n.4 (10th Cir.), *cert. denied*, 115 S.Ct. 80 (1994), we have a continuing obligation to assure ourselves that appellate jurisdiction exists, *Qwest Communications International, Inc. v. F.C.C.*, 240 F.3d 886, 891 (10th Cir. 2001). Nevertheless, we find that we have jurisdiction in this case.

In its order granting Lehockey's Rule 50 motion, the district court stated that

> . . . I agree with Defendant that a new trial is not the
> appropriate remedy. However, should my Order dismissing
> this case be reversed on possible appeal, I find that Defendant
> would be entitled to a new trial, thereby allowing Defendant
> an opportunity to conduct a prepared cross-examination of
> Plaintiff and expert witnesses instead of being sand-bagged
> with Plaintiff's decision to start telling the truth in the middle
> of cross-examination.

(Aplt. App., Vol. 2 at 544.) This conditional ruling is fully contemplated by Rule 50(c)(1), which provides, in relevant part:

> If the renewed motion for judgment as a matter of law is
> granted, the court shall also rule on the motion for a new trial,
> if any, by determining whether it should be granted if the
> judgment is thereafter vacated or reversed, and shall specify
> the grounds for granting or denying the motion for the new

trial. *If the motion for a new trial is thus conditionally granted, the order thereon does not affect the finality of the judgment.*

**FED.R.CIV.P.** 50(c)(1) (emphasis added). Accordingly, we have jurisdiction to consider this appeal.

## III. LEGAL ANALYSIS

On appeal, Chávez maintains that the district court erred in three respects: (1) by granting Lehockey's motion to dismiss the case as a sanction for Chávez's perjurious testimony during discovery; (2) by excluding testimony of other excessive force claims against Lehockey; and (3) by granting the City of Albuquerque's motion for summary judgment on his municipal liability claims. We will review these arguments *seriatim*.

### A. DISMISSAL AS A SANCTION FOR PERJURY

"It has long been understood that '[c]ertain implied powers must necessarily result to our Courts of justice from the nature of their institution,' powers 'which cannot be dispensed with in a Court, because they are necessary to the exercise of all others.'" *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43, 111 S.Ct. 2123, 2132 115 L.Ed.2d 27 (1991) (quoting *United States v. Hudson*, 7 Cranch 32, 34, 3 L.Ed. 259 (1812)); *see also Smith v. Northwest Financial Acceptance, Inc.*, 129 F.3d 1408, 1419 (10th Cir. 1997). Among the multifarious manifestations of the courts' inherent powers is the authority to vacate a judgment when a fraud has been perpetrated on the court, *Chambers*, 501 U.S. at 44, 111 S.Ct. at 2132, such as when a party has perjured himself during the discovery process,

*Archibeque v. Atchison, Topeka, and Santa Fe Railway Co.*, 70 F.3d 1172, 1174 (10th Cir. 1995). We review such a determination for abuse of discretion. *Ashby v. McKenna*, 331 F.3d 1148, 1149 (10th Cir. 2003).

Although the district court has discretion to dismiss, it must be exercised with restraint. Because dismissal is such a harsh sanction, it is appropriate only in cases of "'willfulness, bad faith, or [some] fault of petitioner.'" *Archibeque*, 70 F.3d at 1174 (quoting *National Hockey League v. Metropolitan Hockey Club, Inc.*, 427 U.S. 639, 640, 96 S.Ct. 2778, 2779 , 49 L.Ed.2d 747 (1976)). We have articulated a number of factors that may inform the district court's discretion in determining whether dismissal is an appropriate sanction:

> (1) the degree of actual prejudice to the defendant; (2) the amount of interference with the judicial process; (3) the culpability of the litigant; (4) whether the court warned the party in advance that dismissal of the action would be a likely sanction for noncompliance; and (5) the efficacy of lesser sanctions.

*Ehrenhaus v. Reynolds*, 965 F.2d 916, 921 (10th Cir. 1992) (internal citations and quotation marks omitted). This list is not exhaustive, nor are the factors necessarily equiponderant. *See Archibeque*, 70 F.3d at 1174; *Ehrenhaus*, 965 F.2d at 921. The district court cited and considered each of the *Ehrenhaus* factors in its Memorandum Opinion and Order of August 18, 2003.[2] We find its analysis persuasive, and Chávez's

---

[2] Chávez suggests the district court further erred in not holding an evidentiary hearing prior to dismissing his case. *See Ehrenhaus*, 965 F.2d at 921 (noting that "[t]he

- 7 -

arguments on appeal do not convince us otherwise.

First, Chávez argues that Lehockey was not actually prejudiced by his perjury. Indeed, he posits that his fallacious testimony actually helped Lehockey's case by allowing him to impeach Chávez more effectively. Not only is this argument "somewhat cavalier," as characterized by the district court (Aplt. App., Vol 2 at 540), it utterly misses the point of the qualified immunity doctrine. "[T]he 'entitlement [to qualified immunity] is an *immunity from suit* rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial.'" ***National Commodity and Barter Association v. Archer***, 31 F.3d 1521, 1532 n.8 (10th Cir. 1994) (quoting ***Mitchell v. Forsyth***, 472 U.S. 511, 526, 105 S.Ct. 2806, 2815, 86 L.Ed.2d 411 (1985)) (second alteration in ***Archer***; emphasis in ***Mitchell***). Forcing a defendant entitled to invoke the defense to proceed to trial on the basis of a lie fundamentally undermines this important principle.

Chávez argues next that his conduct did not substantially interfere with the judicial process. In this regard, he points out that he never lied about the facts of the attack itself, and maintains that his lies regarding the events leading up to that encounter were not material. The law is to the contrary. Claims of excessive force are governed by a

court should ordinarily evaluate these factors on the record"). We find no error in this regard. Not only did Chávez not request such a hearing, but moreover, the district court already was intimately aware of the issues undergirding the motion. Under such circumstances, an evidentiary hearing was not required.

standard of objective reasonableness. ***Graham v. O'Connor***, 490 U.S. 386, 395, 109

S.Ct. 1865, 1871, 104 L.Ed.2d 443 (1989). Under this standard, the determination

whether excessive force was used turns on the totality of the circumstances of each

particular case, "including the severity of the crime at issue, whether the suspect poses an

immediate threat to the safety of the officers or others, and whether he is actively resisting

arrest or attempting to evade arrest by flight." ***Id***. 490 U.S. at 396, 109 S.Ct. at 1872.

Thus, the facts that Chávez was thought to be a violent gang member and possibly armed,

that he fled even after being sprayed with mace, that he led police on a protracted chase

through the city streets even after three of his car's tires were flattened, that he crashed

through a fence, and that he invaded a nearby apartment just prior to his encounter with

Lehockey were all relevant to the determination whether Lehockey's actions were

objectively reasonable. Not only was Chávez's lack of candor about these events

material, it was material to the determination of the central issue in the case.

The next factor the district court considered was Chávez's culpability in the

fabrication. Chávez attempted to explain himself by claiming that

> I was in prison at the time that you took this deposition. I was
> under guard. I was in – I didn't really know how to go about
> it right, you know? It was my – I have never really been
> involved in a lawsuit, and at the time, I was thinking, well, I
> didn't know if it was going to cause me more problems or
> what the whole situation – I was – I didn't answer the way I
> should have but I'm stating the truth today.

(Aplt. App., Vol. 4 at 409.) We fail to see how this self-interested justification

diminishes Chávez's culpability even slightly.

With respect to the factor of whether a prior warning was necessary before the case was dismissed, Chávez admits that no such warning was warranted in these circumstances. Moreover, because the perjurious testimony was given under oath, an additional warning would have been superfluous at best. "Once a witness swears to give truthful answers, there is no requirement to warn him not to commit perjury or, conversely to direct him to tell the truth. It would render the sanctity of the oath quite meaningless to require admonition to adhere to it." *See Webb v. Texas*, 409 U.S. 95, 97 n.*, 93 S.Ct. 351, 353 n.*, 34 L.Ed.2d 330 (1972) (citation and internal quotation marks omitted).

Finally, Chávez argues that the district court should have imposed lesser sanctions, again relying on his contentions that his lies were immaterial and did not prejudice the defense. These arguments fail along with the insupportable assumptions on which they are based. Chávez further contends that he had been punished already by the jury's failure to award him more than nominal damages.[3] The district court considered this argument, but found that "[t]he fact that Plaintiff may have gained nothing as a result of

---

[3] Chávez maintains also that, despite the district court's determination that his counsel was not subject to sanctions under 28 U.S.C. § 1927, the dismissal was a *de facto* sanction on counsel because it deprived him of the right to recover attorney's fees. However, the jury's verdict for nominal damages would not have supported an award of attorney's fees in any event. *See Farrar v. Hobby*, 506 U.S. 103, 114-15, 113 S.Ct. 566, 574-75, 121 L.Ed.2d 494 (1992).

his perjury does not mean that he should not be sanctioned for his conduct, particularly where analysis of the other Ehrenhaus factors calls for the imposition of severe consequences." (Aplt. App., Vol. 2 at 544-45.) We find no abuse of discretion in this conclusion, which is fully concordant with the law. *See ABF Freight Systems, Inc. v. National Labor Relations Board*, 510 U.S. 317, 329-30, 114 S.Ct. 835, 842, 127 L.Ed.2d 152 (1994) (Scalia, J., concurring in the judgment) ("The principle that a perjurer should not be rewarded with a judgment – even a judgment otherwise deserved – where there is discretion to deny it, has a long and sensible tradition in the common law.")

Accordingly, we find that the district court did not abuse its discretion in exercising its inherent power to dismiss Chávez's case as a sanction for perjuring himself during discovery.

## B. EXCLUSION OF EVIDENCE OF OTHER INCIDENTS

Prior to the commencement of trial, Lehockey moved *in limine* to preclude evidence or testimony regarding other incidents in which arrestees claimed he used excessive force by deploying Bart. The admissibility of such evidence is governed by Rule 404(b) of the Federal Rules of Evidence, which provides that evidence of other crimes, acts, or wrongs is not admissible to prove character but may be offered to prove "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." **FED.R.EVID.** 404(b). Such evidence is admissible if four factors are satisfied: (1) the evidence is offered for a proper purpose; (2) the evidence is relevant; (3)

the probative value of the evidence is not substantially outweighed by its potential for unfair prejudice; and (4) the district court provides an appropriate limiting instruction upon request. *See United States v. Brooks*, 161 F.3d 1240, 1243 (10th Cir. 1998) (citing *Huddleston v. United States*, 485 U.S. 681, 691-92, 108 S.Ct. 1496, 1502, 99 L.Ed.2d 771 (1988)).

The evidence Chávez sought to introduce fails on the first of these factors.[4] Although Chávez argues that inquiry into these other incidents should have been permitted to show absence of mistake or accident, or alternatively, that Lehockey's use of Bart constituted a "modus operandi," none of these alternative bases for introducing 404(b)-type evidence was implicated on the facts presented. There was no claim or defense suggesting that Lehockey accidentally or mistakenly used the police dog. Indeed, it seems clear that he made a deliberate, conscious decision to do so. Moreover, proof of a "modus operandi" is only relevant when there is an issue regarding the defendant's identity. *See United States v. Oberle*, 136 F.3d 1414, 1419 (10th Cir.), *cert. denied*, 119 S.Ct. 197 (1998); *United States v. Porter*, 881 F.2d 878, 885-86 (10th Cir.), *cert. denied*, 110 S.Ct. 348 (1989). No such issue was raised in this case.

---

[4] The district court found that such evidence was not relevant under the objective reasonableness standard of *Graham v. O'Connor*. This conclusion is consistent with the decisions of several other federal appellate courts which have considered similar requests. *See, e.g.*, *Gates v. Rivera*, 993 F.2d 697, 700 (9th Cir. 1993); *Robinson v. City of St. Charles, Missouri*, 972 F.2d 974, 976 (8th Cir. 1992); *Greenridge v. Ruffin*, 927 F.2d 789, 791-92 (4th Cir. 1991).

For these reasons, we find that the district court did not abuse its broad discretion in precluding the introduction of this evidence. *See United States v. Wilson*, 107 F.3d 774, 782 (10th Cir. 1997).

## C. DISMISSAL OF MUNICIPAL LIABILITY CLAIMS

Lastly, Chávez claims the district court erred in dismissing his claims against the City of Albuquerque because there were genuine issues of material fact regarding (1) the constitutionality of the City's written policy allowing an officer to use a police dog to apprehend a fleeing felon; (2) the constitutionality of the City's policy categorically defining use of a police dog as constituting less force than use of a baton; and (3) whether the City had a custom of ignoring police dogs' failures to "guard and bark" in apprehending suspects. Whatever the merits of these arguments, Chávez failed to raise them below. Absent extraordinary circumstances not present here, *see Hicks v. Gates Rubber Co.*, 928 F.2d 966, 970 (10th Cir. 1991), we do not address arguments raised for the first time on appeal, *Tele-Communications, Inc. v. Commissioner of Internal Revenue*, 104 F.3d 1229, 1232 (10th Cir. 1997).

**AFFIRMED**.

Entered for the Court

Robert E. Blackburn
District Judge

- 13 -