**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**August 3, 2005**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

    Plaintiff-Appellee,

v.

JAMES D. BRIGMAN,

    Defendant-Appellant.

No. 04-3465

(D.C. No. 2:03-CR-20090-01-JWL)

(D. Kan.)

---

**ORDER AND JUDGMENT**[*]

---

Before **BRISCOE, BALDOCK,** and **TYMKOVICH**, Circuit Judges.

---

Defendant James Brigman was convicted of making a false statement in connection with the attempted acquisition of a firearm and ammunition in violation of 18 U.S.C. § 922(a)(6), and was sentenced to a term of imprisonment of 120 months in accordance with the penalty provisions set forth in 18 U.S.C. § 924(a)(2). Brigman now appeals, challenging the district court's admission of various items of evidence. We exercise jurisdiction pursuant to 28 U.S.C. § 1291 and affirm.

---

[*]This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

I.

*Factual background*

On the evening of November 20, 2002, Sarah Roos, a resident of Gladstone, Missouri, left her home at approximately 10:30 p.m. to run an errand. She returned home shortly thereafter, parked her vehicle in the driveway, and locked the vehicle before going inside her house. The following morning, Mrs. Roos realized that her vehicle had been broken into and her purse, which she had left on the front seat, had been stolen. Among the items contained in Mrs. Roos' purse were her checkbook (for the joint checking account she shared with her husband, Michael Roos) and wallet, which in turn contained her credit cards, her driver's license, and health insurance cards with her husband's Social Security number printed on them. Approximately two days after the theft, Mrs. Roos learned that someone had withdrawn approximately $2,000.00 from her checking account. By late November 2002, Mrs. Roos began receiving credit card bills from various retailers that she had not done business with, as well as telephone calls from other retailers regarding credit accounts that had been opened in her name or that of her husband. In December 2002, someone using the name of Mrs. Roos' husband, Michael Roos, made various purchases in the Kansas City metropolitan area (e.g., jewelry, a computer, the rental of a Mercedes-Benz).

On December 10, 2002, a man entered The Bullet Hole, a federally licensed gun dealership located in Overland Park, Kansas, and attempted to purchase a firearm and

ammunition. The man presented a Kansas driver's license listing his name as Michael B. Roos (the name of Mrs. Roos' husband) and his address as 7853 Mullen Drive, Lenexa, Kansas (the actual address of defendant Brigman's father). The photograph on the driver's license was later determined by law enforcement authorities to be that of defendant Brigman. As payment for the gun and ammunition, the man signed a check (drawn on the account of a company called Blue Diamond Dairy Services and made out to Michael Roos allegedly for payroll) using the name Michael Roos. In accordance with The Bullet Hole's normal business practices, an employee of The Bullet Hole ran the check through Telecheck and received back a code indicating either that there was not enough information to approve the check or that the check had not been approved. Accordingly, the employee returned the check to the man and voided the transaction. However, the employee kept a record of the voided check for The Bullet Hole's records.

On January 4, 2003, Larry Alderman, a police officer with the Kansas City, Missouri, Police Department, was involved in the search of a Mitsubishi Galant following a reported shooting outside a nightclub. Inside the automobile Alderman found a variety of documents with different names on them. Included was the voided check that had been used during the attempted firearm and ammunition purchase at The Bullet Hole on December 10, 2002. Also included was the checkbook cover from Mrs. Roos' checkbook, a Commerce Bank check in the name of Michael Roos, several United Missouri Bank checks in the name of Michael Roos, a hotel receipt in the name of

Michael Roos, jewelry store receipts in the name of Michael Roos, a gift certificate in the name of Michael Roos, a jewelry store receipt in the name of Sarah Roos, a check in the name of Roos Dairy Supply, Inc., and a check in the name of Roos Plumbing and Heating.

The items seized by Alderman from the Galant were subsequently analyzed for fingerprints. Six fingerprints were identified as belonging to defendant Brigman. In particular, Brigman's left thumb print was found on the voided check that had been attempted to be used at The Bullet Hole on December 10, 2002.

*Procedural background*

On July 23, 2003, Brigman was indicted in connection with the attempted purchase of a firearm and ammunition from The Bullet Hole on December 10, 2002. The indictment charged Brigman with making false and fictitious oral and written statements to The Bullet Hole in an attempt to acquire a firearm and ammunition, in violation of 18 U.S.C. §§ 922(a)(6) and 924(a)(2). The case proceeded to trial on June 1, 2004. The following day, June 2, 2004, the jury found Brigman guilty as charged. On January 8, 2005, the district court sentenced Brigman to a term of imprisonment of one-hundred-twenty months, to be served consecutively to sentences imposed on Brigman in Johnson County, Kansas, arising out of his theft of Michael Roos' identity.

II.

In his appeal, Brigman challenges the district court's admission of three categories of evidence: (1) evidence of a prior felony conviction; (2) evidence that his fingerprint was found on the check tendered for payment at The Bullet Hole on December 10, 2002; and (3) various items found by Officer Alderman during his search of the Galant and having no apparent reference to Michael or Sarah Roos. These arguments will be addressed in turn below.

*Evidence of prior felony conviction*

The district court, in a pre-trial ruling triggered by Brigman's filing of a motion in limine, concluded that evidence of Brigman's prior felony conviction was relevant and admissible "to show that th[e] [charged crime of making a false statement to obtain a firearm] was done with a particular intent in mind . . . ." ROA, Vol. 2, at 78. In addition, the district court concluded such evidence was admissible for purposes of showing motive. Id. at 79. Accordingly, at trial, the government introduced and the district court admitted testimony from a federal law enforcement agent that Brigman had been convicted of a felony in 1988 in the State of Missouri.

On appeal, Brigman contends the district court erred in admitting this evidence. According to Brigman, evidence of his prior felony conviction was irrelevant because neither the existence of a prior felony conviction, nor his status as a "prohibited person," was an element of the charged crime. Brigman further argues that, even if evidence of his

prior felony conviction was relevant to show motive or intent, the district court should simply have allowed him to stipulate that he was a person prohibited from possessing firearms (a stipulation the record indicates he was willing to make).

We review for abuse of discretion a district court's decision to admit evidence. See United States v. Campos, 221 F.3d 1143, 1148 (10th Cir. 2000). Under this standard, we "will not disturb an evidentiary ruling absent a distinct showing that it was based on a clearly erroneous finding of fact or an erroneous conclusion of law or manifests a clear error in judgment." United States v. Dowlin, 408 F.3d 647, 659 (10th Cir. 2005) (internal quotations omitted).

Federal Rule of Evidence 404(b) provides that "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith." Such evidence may, however, "be admissible for other purposes, such as proof of motive . . . [or] intent . . . ." Fed. R. Evid. 404(b). Four factors must be satisfied before such evidence can be admitted: (1) the evidence must be offered for a proper purpose; (2) the evidence must be relevant; (3) the probative value of the evidence must not be substantially outweighed by its potential for unfair prejudice; and (4) the district court must, upon request, provide a limiting instruction. Chavez v. City of Albuquerque, 402 F.3d 1039, 1046 (10th Cir. 2005).

All four of these requirements were met in the instant case. Although it is true, as asserted by Brigman, that evidence of a prior felony conviction was not an element of the

charged offense, such evidence was relevant to the issues of motive and intent. Under

federal law, a person convicted of a felony is permanently prohibited from purchasing,

acquiring, or even possessing firearms or ammunition. ROA, Vol. 2, at 255 (testimony of

ATF agent). Thus, the evidence of Brigman's 1988 felony conviction was relevant at trial

for purposes of establishing why Brigman would have attempted to use a false identity to

purchase a firearm and ammunition at The Bullet Hole. Further, the probative value of

the evidence of Brigman's 1988 felony conviction was not outweighed by its potential for

unfair prejudice. In this regard, it is important to note that the government did not

describe the nature of Brigman's 1988 felony conviction. Rather, its evidence simply

indicated that he was convicted of a felony in 1988 in the State of Missouri, and

explained the ramifications of that prior felony on Brigman's ability to purchase or

possess firearms and ammunition. Id. Moreover, as the district court noted in its pre-trial

ruling, this was not "the only so-called blot on the defendant's record," nor did it

"otherwise tarnish his image as a pristine individual." Id. at 78. To the contrary, the

government's evidence unequivocally established that Brigman was involved in stealing

Michael Roos' identity and in fact had pled guilty in Johnson County, Kansas, in

connection with those crimes. Id. at 249. Further, during closing argument, Brigman's

own counsel acknowledged that Brigman stole Mr. Roos' identity. Finally, the district

court offered to give a contemporaneous limiting instruction to the jury regarding the

challenged evidence, but Brigman's counsel did not make a request for such an

instruction.  Id. at 82 ("I will give a limiting instruction if you [defense counsel] so request."), 254-57 (testimony of ATF agent regarding Brigman's 1988 conviction and its effect on his ability to purchase or possess firearms and ammunition).  In any event, the district court gave the jury a limiting instruction regarding "other crime" evidence at the conclusion of all the evidence.  ROA, Vol. 1, Doc. 27, at 20 (Instruction No. 18).

As for Brigman's assertion that the district court erred in refusing to accept and admit his proposed stipulation that he was a "prohibited person" who could not purchase firearms or ammunition, we conclude the district court acted well within its discretion when it held that the phrase "prohibited person" was too obscure and confusing for a jury to understand.  ROA, Vol. 2, at 78 ("the jury may be obscured as [to] the extent to which the defendant even knew that he was a prohibited person").  Moreover, the district court concluded it would be "unfair to the prosecution," in terms of proving motive and intent, to limit the prosecution to Brigman's proposed stipulation.  Although Brigman contends the case of United States v. Old Chief, 519 U.S. 172 (1997) "is analogous" and should have required the district court to accept his proffered stipulation, we disagree.  Aplt. Br. at 9.  In Old Chief, the defendant was charged with violating 18 U.S.C. § 922(g)(1) and offered to stipulate at trial to the fact of his prior conviction.  The Supreme Court held that, in light of the defendant's proffered stipulation, it was unduly prejudicial under Rule 403 for the trial court to admit the full record of the defendant's prior conviction (including the name and nature of the prior offense).  The Court was careful, however, to

limit its holding to cases involving "proof of felon status," id. at 183 n. 7, which is not at issue here. Further, the Court emphasized that in cases in which the defendant's felon status is not at issue, "the prosecutor's choice [of what evidence to introduce at trial] will generally survive a Rule 403 analysis when a defendant seeks to force the substitution of an admission for evidence creating a coherent narrative of his thoughts and actions in perpetrating the offense for which he is being tried." Id. at 191-92.

In sum, we conclude there was no abuse of discretion on the part of the district court in admitting evidence of Brigman's 1988 felony conviction.

*Admission of fingerprint evidence*

During the investigation of Brigman's crimes, Kathleen Hengtes, a certified latent fingerprint examiner with the Kansas City, Missouri, Police Department, determined that Brigman's left thumb print was on the check that was used in the attempted purchase of a firearm and ammunition at The Bullet Hole on December 10, 2002. When Hengtes prepared a written report of her conclusions, however, she mistakenly stated in the report that Brigman's left thumbprint was found on another check, thereby leaving the impression to a reader of the report that no identifiable fingerprints were found on the check used at The Bullet Hole. Brigman's trial counsel, in reliance on Hengtes' report, told the jury during opening statements that Brigman's fingerprints were not found on the check used at The Bullet Hole. During the subsequent course of the trial, however, the prosecutor met with Hengtes and determined that (a) Hengtes' report was erroneous, and

(b) Hengtes would in fact testify that she found Brigman's left thumbprint on the check used at The Bullet Hole. The prosecutor immediately informed defense counsel of this information, and defense counsel in turn asked the district court to exclude Hengtes' testimony (arguing that, had she been aware of the actual evidence, she would have advised Brigman to plead guilty and, in any event, would not have made certain remarks in her opening statement). ROA, Vol. 2, at 190-92. The district court found, as a matter of historical fact, that what had occurred was simply "inadvertent or a mistake on the part of" Hengtes, and that as soon as the prosecution learned of the mistake they disclosed it to defense counsel. Id. at 197. In light of these circumstances, the district court concluded it would be inappropriate "to exclude a key piece of evidence in this case which is highly material to the defendant's guilt or innocence." Id. at 202. Instead, the district court indicated it was willing to accommodate Brigman, in terms of sentencing, should he choose to plead guilty in light of the discovery of Hengtes' mistake. Because, however, Brigman chose not to do so, the district court concluded that the only remaining prejudice stemming from Hengtes' mistake was its impact on defense counsel's opening statements and her ability to adequately cross-examine Hengtes. In order to counter this potential prejudice, the district court (a) agreed to give defense counsel additional time, if requested, to prepare for cross-examination of Hengtes, (b) expressly prohibited the prosecution, during closing arguments, from commenting on the remarks made by defense counsel during opening statements, and (c) agreed to instruct the jury, following

Hengtes' testimony, that the defense was unaware of the true nature of her testimony at the time opening statements were given. Although Hengtes subsequently testified, Brigman's counsel did not request additional time to prepare for her cross-examination.

On appeal, Brigman challenges the district court's decision to admit Hengtes' testimony. According to Brigman, the admission of this evidence violated his due process rights. More specifically, Brigman contends "that the late disclosure" of the true nature of Hengtes' testimony "severely hampered [his] decision whether to plead or go to trial and his ability to defend himself at trial." Aplt. Br. at 17. We review the district court's decision to admit Hengtes' testimony for abuse of discretion. See Campos, 221 F.3d at 1148.

We find no merit to Brigman's assertions of prejudice. A review of the record on appeal clearly indicates that the district court was willing to accommodate Brigman had he chosen to plead guilty after learning about the fingerprint evidence affirmatively linking him to the check used during the attempted transaction at The Bullet Hole. More specifically, the district court stated on the record that it was willing to consider a downward departure at sentencing in order to offset any enhancements or loss of reductions that resulted from him failing to plead guilty at an earlier time (e.g., loss of reduction for acceptance of responsibility). Nevertheless, it is apparent that Brigman chose not to plead guilty, and thus is in no position now to complain about the impact of the mistake on his decision whether to plead. The same holds true with respect to his

assertion that the late disclosure of the evidence hampered his ability to defend himself. As noted above, the district court specifically indicated on the record that it was willing to give defense counsel as much time as she needed to review the fingerprint evidence and prepare to cross-examine Hengtes. Notably, however, defense counsel did not ask for any additional time to do so. Finally, it is apparent from reviewing the trial transcript that the district court took all available steps to offset any prejudice resulting from Hengtes' mistake, including prohibiting the prosecution from attacking defense counsel's opening statements and instructing the jury regarding the nature of Hengtes' mistake.

Lastly, although Brigman attempts in his appellate brief to characterize this as a case in which the government violated a discovery order issued by the district court, the district court specifically found that the situation was simply the result of an "inadvertent [error] or mistake on the part of the examiner of the fingerprints," i.e., Ms. Hengtes. ROA, Vol. 2, at 197. Thus, the cases Brigman has cited in his appellate brief involving discovery violations are inapposite.

*Admission of other evidence of possible forgery*

In addition to the various items found in the Mitsubishi Galant linking Brigman to the Sarah and Michael Roos, the government introduced and the district court admitted several other items found by the police in the Galant. These included a Washington state driver's license, a group of checks written to James Elementary School, a group of checks in the name of James Woody, a jewelry store receipt in the name of Alan Mytag, a

department store credit application in the name of David Johnson, and a piece of paper with the signatures of Joanne H. Warren and Maria C. Jones written several times (as if someone was practicing the signatures).  In admitting these items, the district court overruled Brigman's objection that the items were irrelevant[2], stating:

> I believe that the context in which these documents were found that clearly have a tie to what the government is attempting to prove are probative.  I'm not sure they necessarily help the government or that they are particularly persuasive, but I cannot say that the government should be penalized for putting in the entirety of the information that was found in the car rather than picking and choosing just the good things that were found in the car.  I see no unfairly prejudicial effect from this evidence, and even those items for which the apparent probative value is relatively small, . . . the fact that that is part of the context in which the rest of these things were found makes it sufficiently probative in my mind to cause [defendant's] objection to be overruled.

ROA, Vol. 2, at 129.

On appeal, Brigman contends the district court abused its discretion in admitting these other items.  According to Brigman, the admission of this evidence "presented a substantial danger of unfair prejudice, . . . confusion of the issues and waste of time." Aplt. Br. at 21.  We disagree.

_____

[2] Prior to trial, Brigman filed a motion in limine seeking to exclude items from the Galant that pertained to "alleged credit card fraud" and "the alleged making of counterfeit checks."  ROA, Vol. 1, Doc. 17, at 2.  The district court generally denied that motion, noting: "I think . . . we have come to . . . an agreement now that anything that was in the car is admissible as long as it is not attempted to be admitted for the purpose of showing that the defendant committed some act on some prior occasion; rather, it's admitted for the purpose of, here is what was in the car.  I've said ten times why I think that's relevant, and I think it's equally relevant from the defendant's perspective.  The more stuff there was and the less that was tied to Mr. Brigman, that's relevant too."  Id., Vol. 2, at 62-63.

As part of his defense, Brigman attempted to distance himself from the Galant and its contents. For example, during his cross-examination of Officer Alderman, Brigman was able to establish that (a) the Galant was not registered in his name, (b) was not parked at his home at the time of the search, and (c) he (Brigman) was not present at the time the Galant was searched. To counter Brigman's defense, the government introduced all the items found in the Galant (save for some ammunition) so that the jury would have a complete picture of what Officer Alderman found inside the Galant during his search. Although the jury could have inferred from some of the items that Brigman had engaged in other identity thefts, the government made no express assertion to this effect. To further link Brigman to the Galant and its contents, the government presented testimony indicating that six of Brigman's fingerprints had been found on four of the items found in the Galant (including an item, i.e., a department store credit application, that did not have either Sarah or Michael Roos' name on it). Id. at 237. In sum, the items found by Alderman in the Galant, though certainly not the most important in the case, were relevant for purposes of linking Brigman to the Galant and its contents, in particular the check that was tendered for payment during the transaction at The Bullet Hole on December 10, 2002.

AFFIRMED.

Entered for the Court

Mary Beck Briscoe
Circuit Judge