*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206
File Name: 06a0186p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

—————————————

UNITED STATES OF AMERICA,

      *Plaintiff-Appellee,*

    *v.*

AARON FRASER, a/k/a Asante Kahari,

      *Defendant-Appellant.*

No. 05-1423

>

Appeal from the United States District Court
for the Western District of Michigan at Grand Rapids.
No. 04-00167—Richard A. Enslen, District Judge.

Argued: April 26, 2006

Decided and Filed: June 1, 2006

Before: SUHRHEINRICH, GILMAN, and ROGERS, Circuit Judges.

—————————————

## COUNSEL

**ARGUED:** Paul L. Nelson, FEDERAL PUBLIC DEFENDERS OFFICE, WESTERN DISTRICT OF MICHIGAN, Grand Rapids, Michigan, for Appellant. Michael A. MacDonald, ASSISTANT UNITED STATES ATTORNEY, Grand Rapids, Michigan, for Appellee. **ON BRIEF:** Paul L. Nelson, FEDERAL PUBLIC DEFENDERS OFFICE, WESTERN DISTRICT OF MICHIGAN, Grand Rapids, Michigan, for Appellant. Michael A. MacDonald, ASSISTANT UNITED STATES ATTORNEY, Grand Rapids, Michigan, for Appellee.

—————————————

## OPINION

—————————————

ROGERS, Circuit Judge. This novel case concerns whether the district court properly admitted into evidence *The Birth of a Criminal*, a published book by defendant Asante Kahari[1] that describes the exact counterfeit-check scheme for which Kahari was found guilty. Kahari sent counterfeit checks in interstate commerce to the nonfictional Ms. Hugg, a woman residing in Michigan whom he met in an internet dating chat room. Kahari convinced Hugg to cash the counterfeit checks, and she gave him the money when he flew from New York to Michigan to meet her. One chapter of Kahari's book describes how to execute this very scam.

---

[1]The defendant was born Aaron Fraser. The Presentence Report says that Fraser legally changed his name to Asante Kahari in January 2000. Because the parties and the district court refer to defendant as "Kahari," we also refer to him as "Kahari" throughout this opinion.

After Kahari's counsel argued in his opening statement that Hugg had "duped" Kahari into being part of the scam, the government moved to admit portions of *The Birth of a Criminal* into evidence. The district court admitted portions of the book and a summary to demonstrate "motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident." J.A. 196.

The sole legal issue preserved for appeal is whether the district court committed reversible error in admitting portions of the book's text into evidence in violation of Federal Rules of Evidence 403 and 404(b). We affirm the judgment of the district court because *The Birth of a Criminal* was admissible to prove Kahari's intent. Although the district court committed some error in its limiting instruction to the jury and in its description of the book summary as "facts," these errors did not affect Kahari's substantial rights.

## I.

Kahari met Hugg in an American Online chat room during the fall of 2001. After exchanging emails, the two exchanged phone numbers. Over the telephone, Kahari asked Hugg if he could send her some checks because he was moving and did not have a bank account. Hugg interpreted Kahari's request to mean that she would deposit the checks and that "he would come and get the money." J.A. 140. She told him that she did not have a bank account, but that her mother and sister did. He asked for her mother's and sister's names, and Hugg provided them.

A package from Federal Express arrived on October 4, 2001, with four counterfeit checks. Two of the checks were payable to Hugg's mother, and two were payable to Hugg's sister. The total amount of the checks was $38,929.39. Hugg testified that she did not know that the checks were counterfeit. Hugg had her mother and sister endorse the checks. Hugg then deposited them in a local bank. A few days later Hugg and her mother withdrew $38,000 in cash from the bank.

Hugg later called Kahari and told him that she had withdrawn the money. Kahari told her to get a room at a local hotel, and he said that he could catch the next flight from New York to meet her. When Kahari arrived at the airport, Hugg picked him up and brought him to the hotel. Hugg gave him the money. The couple then went shopping, and Kahari purchased several suits and ties. They also went to a jewelry store to look at men's rings. During their shopping, Kahari told Hugg that he wanted to "start a family" with her. J.A. 147. After eating dinner, Kahari went to a Western Union office and wired $6000 to Patricia Harris. Harris had been dating Kahari during the time he corresponded with Hugg, even though Harris knew that he was married to another woman.

The next morning, Hugg took Kahari to the airport to catch a flight to New York. Hugg received $1200 from Kahari so that she could fix her automobile. He asked her if she wanted to go to New York with him, but she said no. Hugg never saw or heard from Kahari again until she testified at trial.

The bank eventually dishonored the four counterfeit checks. After a period of investigation, a grand jury for the Western District of Michigan returned a six-count indictment against Kahari in July 2004. He was charged with one count of bank fraud, four counts of uttering and possessing counterfeit securities, and one count of mail fraud.

Before Kahari's trial began, the United States Attorney's Office obtained from Amazon.com a copy of *The Birth of a Criminal*. The government learned of the book from Kahari's website, which described the book as "the new autobiography from Asante Kahari." J.A. 54. On the first day of trial, the government sought to admit into evidence text from the chapter "From Blue Collar to White Collar Crime." In that chapter, Kahari wrote that he had a computer program that permitted him to make counterfeit checks and that he had other persons deposit the checks. Kahari stated that he was aware that banks are obligated to clear checks within three days and that this

clearance time permitted counterfeit-check fraud.  J.A. 46.  To have the checks cashed, Kahari wrote, "I would get on line, meet a broad and be mailing her the check the next day. . . . I saw damn near 50 states in just taking planes, picking up money.  I would have my money in my ass, my shoes, and I would always shop wherever I went so if I got busted with the money, at least I got some clothes."  J.A. 47 (from *The Birth of a Criminal*).  The book also says that he would find women on America Online's "love section."  J.A. 47-48 (from *The Birth of a Criminal*).

The government asserted three legal theories for admitting the excerpts into evidence:  (1) as relevant evidence under Federal Rule of Evidence 402 because Kahari admitted his knowledge of the scam, (2) as relevant evidence under Rule 402 to show Kahari's state of mind while in Michigan, and (3) as evidence of "intent, knowledge, planning, and preparation" of his counterfeit-check scam under Rule 404(b).[2]  Defense counsel responded only to the last theory, arguing that the prejudicial effect outweighed the evidence's probative value of intent.  The district judge, after taking a recess, held that the book was "the most damning piece of evidence I've ever seen."  J.A. 55-56.  Although the court held that the book was potentially admissible under Rule 404(b), the court held that "the prejudice far outweighs the probative value . . . at least on the direct case."  J.A. 56.  The court later stated that its decision was "final. . . . [The government is] not going to put it in [its] direct case."  J.A. 57.

After the court's ruling, the parties gave their opening statements.  Defense counsel, in his opening statement, said that Hugg was the one who concocted the counterfeit-check scheme. Kahari was only "the right person to be able to point to if things went wrong . . . ."  J.A. 60.  Defense counsel also stated, "If my client is guilty of anything, he is guilty of having been duped himself by allowing himself to be brought into Grand Rapids and to be essentially set up in case something went wrong . . . ."  J.A. 63.

Immediately following the defense's opening argument, the government asked the court, in light of the defense's opening argument, to reconsider the issue of whether the book was admissible. The court took the government's renewed motion under advisement, and it requested a transcript of the defense's opening statement and the portions of the book that the government wanted to introduce.  The court then had the government call its witnesses.

Two days after the government renewed its motion, the district court held a hearing to determine whether to admit portions of Kahari's book.  The district court heard arguments from counsel, and the district court then determined that the book could be self-authenticated.  The court noted that the book "has a picture of the defendant on the cover, lists the defendant as the author, has a copyright date of 2002, a listed international standard book number 2972571302 on Amazon.com and is published by Gutter Publications.  The book is further authenticated by the defendant's website . . . . The defendant is listed as the founder of Gutter Magazine under a title on the internet of 'about us.'"  J.A. 167-68.

The district court proceeded to determine that the book was admissible.  The district court stated that the purpose of the evidence was "to show defendant's intent and modus operandi."  J.A. 168.  The court held that Kahari had put his intent at issue by portraying himself as a "dupe" in his opening statement. J.A. 168.  The district court then held that the book sets "forth a procedure for a substantially similar plan which follows the pattern of the alleged crimes" and thus could not be excluded by Rule 404(b) because the book constituted "a 'signature' identifying a unique defendant."  J.A. 169-70.  Finally, the district court held that the probative value of the evidence

---

[2]We note that a party proffering evidence need not invoke a rule of evidence when requesting the district court to admit the evidence.  The Federal Rules of Evidence provide that all relevant evidence is admissible unless otherwise provided by the rules or other law.  *See* Fed. R. Evid. 402.

outweighed the danger of unfair prejudice, so Rule 403 did not bar the admission of the book into evidence.

The district court read to the attorneys a proposed jury instruction and a proposed summary of facts from the text, both of which the court had prepared. The defense asked the court to read to the jury additional excerpts from the book. The first addition was as follows: "I'll state for the hundredth time this book is a book of fiction. It is similar to books written by Terry Woods and Shannon Holmes. Don't take this shit serious. Please know that even if I did know who he was I wouldn't tell it." J.A. 175. The second addition encouraged other youth not to engage in illegal activities. It also appears, but is unclear, that defense counsel wanted certain references omitted, so as not to suggest to the jury that Kahari had previously been incarcerated. At the government's request, the court added an additional reference from the book: "This is not a work of fiction, so I really don't know how to begin this journey." J.A. 180. The district court asked whether defense counsel had any objections to the summary. Defense counsel responded that he wanted to ensure that he could cross-examine witnesses as to the material, and the government agreed to his request. After a recess, the court reviewed with the attorneys the additional portions of the text that the court planned to read to the jury, and defense counsel agreed that the excerpts to be read were acceptable. J.A. 186-87. Defense counsel also agreed that the court, as opposed to a government witness, would read the summary of facts.

When the jury returned, the district court read the selected text and the summary. The court then excused the jury again to hear the defense's motion for acquittal. The court denied the motion. The government then asked the court to inform the jury in the limiting instruction that the summary, like the excerpts, was evidence. When the jury returned, the court instructed the jury as follows:

> What I read to you are facts. I read to you about a book, and I read it—and I read . . . some extracts from the book itself, those are also facts. That evidence was not admitted to prove the character of the defendant in order to show that he acted in conformity with the words of that book. It was admitted, however, for the purpose, of your consideration as to proof of motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident. Remember that the defendant is on trial for the six counts in the Indictment, not for writing a book. Do not return a guilty verdict on any count unless the government has proven all the elements of that count beyond a reasonable doubt.

J.A. 195-96. The defense then presented its case.

Kahari was found guilty of all counts in November 2004. The district court sentenced Kahari in February 2005 to twenty-one months' imprisonment, and Kahari now appeals.

## II.

The district court did not abuse its discretion in admitting the book portions and summary into evidence. Kahari's argument against admission is based entirely on Rule 404(b), but that rule does not require the exclusion of the book written by Kahari. The district court admitted the book for a proper purpose (to demonstrate Kahari's intent), and any unfair prejudice to Kahari did not substantially outweigh the probative value of the book.

Rule 404(b) states as follows:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of
> a person in order to show action in conformity therewith. It may, however, be
> admissible for other purposes, such as proof of motive, opportunity, intent,
> preparation, plan, knowledge, identity, or absence of mistake or accident, provided
> that upon request by the accused, the prosecution in a criminal case shall provide
> reasonable notice in advance of trial, or during trial if the court excuses pretrial
> notice on good cause shown, of the general nature of any such evidence it intends to
> introduce at trial.

In *United States v. Gessa*, 971 F.2d 1257, 1261-62 (6th Cir. 1992) (en banc), this court described,
in three steps, the proper process for determining whether evidence should be excluded by Rule
404(b): (1) determine preliminarily whether there is sufficient evidence to find that the "other act"
at issue occurred; (2) determine whether the "other act" is admissible for a proper purpose under
Rule 404(b); and (3) determine whether the evidence of the "other act" is substantially more
prejudicial than probative under Rule 403. *See also United States v. Lattner*, 385 F.3d 947, 955 (6th
Cir. 2004); *United States v. Mack*, 258 F.3d 548, 553 (6th Cir. 2001). Moreover, if requested, the
district court must "'clearly, simply, and correctly' instruct the jury as to the *specific* purpose for
which [it] may consider the evidence." *United States v. Merriweather*, 78 F.3d 1070, 1076-77 (6th
Cir. 1996); *see also United States v. Perry*, 438 F.3d 642, 649 (6th Cir. 2006) (stating that "the court
should nonetheless issue a limiting instruction establishing the basis for the inclusion of the Rule
404(b) evidence").[3] Consideration of these four factors supports the district court's determination
that the evidence was admissible.

### A.        Sufficient Evidence of the "Other Act"

As the parties have argued this case, the "other act" in question is not some sort of previous
carrying out of the scam described, but instead the act of writing about the scam. Kahari does not
argue on appeal that the district court should have determined whether Kahari had previously
committed the kind of fraud described in his book. Moreover, there is no indication that the
evidence was admitted for the purpose of showing that Kahari had actually committed the scam in
the past.

The district court made a proper preliminary determination that Kahari wrote *The Birth of
a Criminal*. The district court found that the book "has the picture of the defendant on the cover,
lists the defendant as the author, has a copyright date of 2002, a listed international standard book
number 2972571302 on Amazon.com and is published by Gutter Publications. The book is further
authenticated by the defendant's website . . . . The defendant is listed as the founder of Gutter
Magazine under a title on the internet of 'about us.'" J.A. 167-68. The district court thus, with
detailed findings, properly determined as a preliminary matter that Kahari wrote the book.

### B.        Proper Purpose

The district court admitted the book excerpts as evidence of intent, and admission of
evidence for that purpose is proper under Rule 404(b). The district court held that, by arguing that
he was "duped," Kahari put his intent to commit fraud at issue. J.A. 168. There is no error in this
determination because, by arguing that he was tricked, Kahari necessarily argued that he did not

---

[3] Although we stated in *Merriweather* that district courts "must" give limiting instructions, *see Merriweather*,
78 F.3d at 1077, there was no indication in that case that one of the parties did not request the instruction. The duty to
provide an instruction, of course, arises only "upon [the] request" of one of the parties. *See* Fed. R. Evid. 105; *see also
Huddleston v. United States*, 485 U.S. 681, 691-92 (1988).

have the specific intent required for the crimes with which he was charged. *See United States v. Rhodes*, 779 F.2d 1019, 1031 (4th Cir. 1985) ("To the extent then that [the defendant] defended on the ground that he was present but innocent, he placed his intent in issue."). Moreover, "the prosecution is under no obligation to wait and see whether the defendant argues the nonexistence of an element of crime before the prosecution presents evidence establishing that element." *United States v. Hamilton*, 684 F.2d 380, 384 (6th Cir. 1982) (citation and quotation marks omitted). At no point did Kahari concede that he had the requisite specific intent. Therefore, the book excerpts were admissible to prove Kahari's specific intent.

Despite Kahari's argument to the contrary, his book was relevant to whether he had been tricked. First, Kahari's description in *The Birth of A Criminal* of how to complete the counterfeiting scam makes it more probable that he participated intentionally than if no such description existed. One is less believably an innocent dupe when he has called the scam the "sweetest hustle in the world." J.A. 190. Second, the book is relevant because it describes the fraud with which he was charged in detail: (1) he would go online to America Online's "love section" to meet a woman; (2) he would mail the woman a counterfeit check; (3) he would fly to wherever the woman lived and pick up the money from the cashed check; and (4) he would spend much of the money on clothes or other things so that he would have something tangible if he were caught. *See* J.A. 189-90. Contrary to Kahari's assertion, his book does more than simply prove that Kahari wrote about fraud in some manner; it is relevant because of the details it offers. The book excerpts, therefore, were clearly relevant to a determination of whether Kahari intended to commit the various frauds with which he was charged.

As a final matter regarding proper purposes, we do not rely on the district court's reasoning that, because the details in the book and the facts surrounding the alleged crime were similar, the book was evidence of Kahari's modus operandi. *See* J.A. 169-70. Proof of "modus operandi" is generally used to demonstrate identity, and Kahari's identity was not at issue in this case. *See Perry*, 438 F.3d at 648 (permitting "signature" evidence when identity was "the largest single issue in this case"); *Chavez v. City of Albuquerque*, 402 F.3d 1039, 1046 (10th Cir. 2005) (holding lower court did not abuse its discretion in excluding evidence because "proof of a 'modus operandi' is only relevant when there is an issue regarding the defendant's identity"). Of course, the mere fact that a district court, without the jury present, mentions a superfluous or improper purpose when admitting the evidence is not grounds for reversal.

### C.    *Prejudice*

The district court did not abuse its discretion in holding that the danger of unfair prejudice to Kahari failed to outweigh substantially the book's probative value. "Although relevant, evidence may be excluded if its probative value is *substantially* outweighed by the danger of *unfair* prejudice . . . ." Fed. R. Evid. 403 (emphasis added). In reviewing whether evidence is admissible under Rule 403, this court "look[s] at the evidence in a light most favorable to its proponent, maximizing its probative value and minimizing its prejudicial effect." *United States v. Zipkin*, 729 F.2d 384, 389 (6th Cir. 1984). The evidence here was very probative because it belied Kahari's claim that he was "duped." Because the evidence is so probative, it is almost impossible for the danger of unfair prejudice to outweigh *substantially* the probative value. For two reasons, the unfair prejudice, if any, against Kahari was not sufficiently egregious to warrant exclusion of the book.

First, the court went out of its way to remove inflammatory portions of the excerpts from the summary and quotations that it read to the jury. The use of a summary, as here, properly mitigates a writing's unfair prejudice. The Fifth Circuit, for instance, approved a lower court's use of a redacted version of *The Anarchist's Cookbook*, which had been found in the defendant's possession, as a means of mitigating prejudice under Rules 403 and 404(b). *United States v. Walters*, 351 F.3d 159, 167 (5th Cir. 2003). Before reading the summary and quotations to the jury, the court in our

case not only read the proposed text to the attorneys but also permitted them to alter the proposed text and add excerpts from Kahari's book. The district court included all of the portions that defense counsel requested. Moreover, the court even asked defense counsel about some potentially prejudicial references:

>    THE COURT: How about, "Don't take this shit seriously."
>
>    MR. DENENFELD: I would include that, Your Honor.
>
>    THE COURT: Even shit?
>
>    MR. DENENFELD: Yes.

J.A. 186. The district court also complied with defense counsel's request not to read a portion that would intimate that Kahari had previously been in prison, and the district court did not reveal the title of the book or the relevant chapter. The district court properly prevented any unfair prejudicial effect, and it did not therefore abuse its discretion in determining that any unfair prejudice did not substantially outweigh the probative value of the summary and book excerpts.

Second, the evidence was not presented in a manner that would cause the jury to convict Kahari because of any propensity to commit counterfeit-check scams. Kahari argues that the "jury likely was confused by the government's summary and the fiction/autobiography issue, errantly inferring that Mr. Kahari had a propensity to commit fraud. In fact, Mr. Kahari has never previously been charged with fraud." Kahari's Br. at 14. This argument fails because there was no danger that the jury would be confused. In this case, one excerpt said that the book was an autobiography, and another excerpt said that the book was fiction. Kahari offers no reason why this discrepancy should cause substantial jury confusion. Moreover, Kahari offers no reason why any confusion surrounding the genre of the book would then cause the jury to infer that Kahari had a propensity to commit check fraud, especially considering that the district court instructed the jury not to use the book as propensity evidence.

For these reasons, the district court did not abuse its discretion in holding that the evidence was admissible and not unfairly prejudicial.

### D.       *Limiting Instruction*

In connection with his challenge to admissibility, Kahari also challenges the content of the district court's limiting instruction and the district court's description of the summary as "fact." Reversal is not required on either of these grounds because neither meets the requirements of plain error review. We review the limiting instruction and the court's description of the summary for plain error because Kahari did not object at trial. *See United States v. Thomas*, 11 F.3d 620, 629 (6th Cir. 1993); *see also* Fed. R. Crim. P. 52(b).

Although the district court partially erred in the limiting instruction that it read to the jury, the district court's error does not require reversal. When reviewing for plain error, this court must decide whether (1) there was an error in the district court, (2) the error was plain, (3) the plain error affected the defendant's substantial rights, and (4) the plain error seriously affected the fairness, integrity or public reputation of judicial proceedings. *Thomas*, 11 F.3d at 629-30.

The district court, as the government concedes, committed error by instructing the jury that the evidence was relevant to more than the issue of intent. The district court instructed the jury that the purpose of the evidence was to prove "motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident." J.A. 196. This overly broad instruction was error, at

the very least, because there was no issue concerning motive, opportunity, or identity in this case. *See Merriweather*, 78 F.3d at 1077.

Listing preparation, plan, knowledge, and absence of mistake was not error in this case because these purposes in the broad instruction overlapped with intent. When a defendant argues that he was an innocent participant in a scheme, there can be little difference among putting his intent, plan, preparation, knowledge, or absence of mistake at issue. All of these purposes serve the same end in this case. For instance the Tenth Circuit in a drug possession case has held that evidence of prior crimes was properly admissible to demonstrate plan, knowledge, intent, and absence of mistake. *See United States v. Conway*, 73 F.3d 975, 981 (10th Cir. 1995). *See also United States v. Rank*, Nos. 84-1257/1870, 85-1249, 1986 WL 18059, at *2 n.5 (6th Cir. Oct. 14, 1986) (per curiam) (holding "other acts" evidence that was permissible to demonstrate a plan to defraud was also admissible to establish intent, knowledge, and absence of mistake). Although these purposes of course may not always be interchangeable, they largely overlap in the context of this case.

Because motive, opportunity, and identity were not at issue in this case, the district court's inclusion of motive, opportunity, and identity as proper purposes in the limiting instruction was plain error. There is, nevertheless, no need to reverse. The district court's inclusion of three improper purposes in the limiting instruction did not affect Kahari's substantial rights. "Normally, although perhaps not in every case, the defendant must make a specific showing of prejudice to satisfy the 'affecting substantial rights' prong of Rule 52(b)." *United States v. Olano*, 507 U.S. 725, 735 (1993). Kahari has failed to carry his burden of demonstrating prejudice here, *see id.* at 734 (stating that defendant has burden of proving prejudice when he fails to object), because he has not identified, in any way, how the jury's consideration of his book prejudiced him as to the issues of motive, identity, or opportunity. First, identity was established by overwhelming evidence even if the jury was not to consider the book for purposes of identity. The United States had a videotape of Kahari shopping with Hugg, an airline ticket in Kahari's name from New York to Grand Rapids, and a Western Union wire transfer sent by Kahari. Moreover, Kahari's defense—that he was tricked into being part of the scam—assumes that he was the man with Hugg in Michigan. Second, the prospect of obtaining money was a strong and uncontested motive for the crime. Finally, because opportunity was evident from Kahari's presence in Michigan and in no way challenged, Kahari was not prejudiced even if the jury considered the book for the purpose of opportunity. Ultimately, Kahari has in no way suggested how the jury's consideration of the book permitted any unfair inferences concerning identity, motive, or opportunity.

Moreover, the district court's instruction addressed the chief evil associated with "other act" evidence. Courts carefully consider "other acts" or character evidence because it is feared that the jury will find the defendant guilty simply because the jury believes either that the defendant has a propensity to commit certain crimes or that the defendant is a bad person. *See* Fed. R. Evid. 404, Advisory Committee Notes to 1972 Proposed Rules. The district court instructed the jury not to use the book excerpts "to prove the character of the defendant in order to show that he acted in conformity with the words of that book." J.A. 196. This instruction directly addressed the concern that the jury would use the evidence for the improper purpose about which Rule 404 is most concerned.

Finally, although Kahari makes much of the district court's reference to the summary and excerpts as "facts" when instructing the jury, the error does not require reversal. Again, Kahari did not object to this reference at trial, and this court therefore reviews for plain error. *See* Fed. R. Crim. P. 52(b). The district court referred to the summary and excerpts as "facts" only after the government asked for the court to clarify for the jury that the summary was evidence. Defense counsel asked that the clarification occur in the context of the limiting instruction, and the court agreed. In the instruction, the court told the jury that both the summary and the excerpts were facts.

The district court probably meant to refer to both as "evidence," not facts, but this error was not prejudicial. If the jury accepted that all of the excerpts were fact, it would be rightly puzzled because one excerpt refers to the book as fiction and the other as an autobiography. These two excerpts are inconsistent and cannot, therefore, both be "fact." Moreover, the district court later referred to the book as evidence when repeating the limiting instruction at the close of trial and once again instructed the jury that "the defendant is on trial for the six counts in the Indictment not for writing a book." J.A. 204. Contrary to Kahari's contention, the district court's misspeaking is not one of the "truly serious errors" that requires automatic reversal. *United States v. Frederick*, 406 F.3d 754, 762 (6th Cir. 2005).[4]

## III.

For the foregoing reasons, the judgment of the district court is AFFIRMED.

---

[4]Kahari suggests in his brief that the district court erred in failing to provide a limiting instruction immediately after the district court read the summary and excerpts. A delayed limiting instruction is no basis for reversal. In *United States v. Miller*, 115 F.3d 361, 366 (6th Cir. 1997), this court held that *Merriweather* "did not impose strict, inflexible temporal or sequential mandates upon the district courts." The court held that it was sufficient that the district court gave the limiting instruction before the jury began its deliberations. *See id.* Because the district court in Kahari's case gave the jury the instruction prior to deliberations, there was, therefore, no error.