**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 06a0869n.06
Filed: November 30, 2006

No. 05-5156

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

UNITED STATES OF AMERICA,            )
                                     )
    **Plaintiff-Appellee,**            )         **ON APPEAL** FROM THE
                                     )         UNITED STATES DISTRICT
v.                                   )         COURT FOR THE EASTERN
                                     )         DISTRICT OF KENTUCKY
MICHAEL TRAVIS WAGGONER,             )
                                     )         **O P I N I O N**
    **Defendant-Appellant.**           )
_____)


**Before:  MERRITT and  MOORE, Circuit Judges; COLLIER,** [*] **District Judge.**

    **KAREN NELSON MOORE, Circuit Judge.**   Defendant-Appellant Michael Travis

Waggoner ("Waggoner") appeals from the district court's judgment and sentence following a jury

trial at which he was convicted on two counts of being a felon in possession of a firearm and one

count of possessing a stolen firearm.  Waggoner argues that the district court erred by not giving a

limiting instruction concerning evidence that Waggoner possessed another firearm.  Waggoner also

argues that the district court improperly assigned Waggoner an increased base offense level for

possession of a semiautomatic assault weapon and erroneously applied the Sentencing Guidelines

as mandatory.  Because the failure to give an additional jury instruction did not constitute plain error,

we **AFFIRM** Waggoner's conviction.  Because the district court increased Waggoner's base offense

_____

[*]The Honorable Curtis L. Collier, Chief United States District Judge for the Eastern District
of Tennessee, sitting by designation.

level without proper evidentiary support and applied the Sentencing Guidelines as mandatory, we **VACATE** Waggoner's sentence and **REMAND** for resentencing.

## I. BACKGROUND

On April 4, 2004, Waggoner and another man came to the home of Vess Gollihue, a friend of Waggoner's. Waggoner was invited inside, and he asked for money. The Gollihues did not give him money, Vess Gollihue asked Waggoner to leave, and Waggoner left through the back kitchen door. Approximately fifteen to twenty minutes later, Vess Gollihue noticed that a .30-06 caliber deer rifle that he kept by the back kitchen door was missing, so he called the police.

At approximately 2:00 p.m. on April 7, 2004, Waggoner and a woman came back to the Gollihue home. Jason Gollihue, Vess's son, asked Waggoner to return his father's rifle. Waggoner claimed that he had obtained the rifle from someone else. He retrieved the .30-06 caliber rifle, which Jason recognized, from his car, but then left without returning it to the Gollihues. Vess and his wife, Geraldine, came home soon thereafter, and they called the police again when Jason told them what had happened.

A short time later, Waggoner and Robin Tingler ("Tingler") came to the home of Harry Glancy ("Glancy"). According to Glancy, Waggoner brandished a nickel-plated pistol. Waggoner told Glancy that he was there to get a chain saw that Waggoner had previously pawned to Glancy. After the three of them discussed the chain saw, Waggoner and Tingler went into another room to talk. After a "considerable length of time," Glancy told them to come out, then looked and found Waggoner and Tingler in a bedroom. Joint Appendix ("J.A.") at 98 (Glancy Test.). Glancy again told them to come out; when they did not, he left the house. Glancy called the police and told them that Waggoner had a firearm and was refusing to leave.

2

Kentucky State Trooper Kevin Minor ("Minor"), Grayson Police Chief Keith Hill ("Hill"), and Grayson Officer Marlene Stewart arrived at Glancy's home. Minor and Hill went inside, where Minor found Waggoner holding an Intratec nine-millimeter ("Tec 9") pistol by a sling. Minor told Waggoner to drop the weapon, and Minor and Hill handcuffed Waggoner. Glancy confirmed that the Tec 9 pistol was his. Glancy never found a nickel-plated pistol in his home.

Trooper Minor drove Waggoner to jail. While in the car, Waggoner told Minor that another person had stolen a family member's rifle and that Waggoner had gone to Glancy's to get it back. Waggoner told Minor that the rifle was in Tingler's SUV, who was then following Minor's car. Minor pulled Tingler's vehicle over, saw the rifle in the back of the SUV, and retrieved it. Vess Gollihue later identified the gun as his missing .30-06 caliber rifle.

Waggoner was charged with two counts of being a felon in possession of a firearm, specifically the .30-06 caliber rifle and the Tec 9 pistol, in violation of 18 U.S.C. § 922(g)(1), and one count of knowingly possessing a stolen firearm, the .30-06 caliber rifle, in violation of 18 U.S.C. § 922(j). Waggoner stipulated to having been convicted previously of a felony. On October 5, 2004, a jury convicted Waggoner on all three counts. On January 4, 2005, the district court entered judgment on the verdict and sentenced Waggoner to 96 months in prison. Waggoner timely appealed.

## II. ANALYSIS

### A. Jury Instructions

#### 1. Standard of Review

Because Waggoner did not request a limiting instruction at trial, we review for plain error. *See* FED. R. CRIM. P. 52(b); *United States v. Martinez*, 430 F.3d 317, 337 (6th Cir. 2005), *cert.*

3

*denied*, --- U.S. ---, 126 S. Ct. 1603 (2006). "The Supreme Court has set forth the following test for plain-error review: there must be (1) error, (2) that is plain, and (3) that affect[s] substantial rights." *United States v. Baker*, 458 F.3d 513, 517 (6th Cir. 2006) (quoting *Johnson v. United States*, 520 U.S. 461, 466-67 (1997) (alteration in original)) (internal quotation marks omitted). An error is plain, satisfying the second factor, if it is "clear" or "obvious." *See United States v. Olano*, 507 U.S. 725, 734 (1993). If we determine that the three factors are met, we may, in our discretion, "notice a forfeited error, but only if (4) the error seriously affect[s] the fairness, integrity, or public reputation of judicial proceedings." *Baker*, 458 F.3d at 517 (quoting *Johnson*, 520 U.S. at 467 (alteration in original)) (internal quotation marks omitted).

### 2. "Other Bad Acts" Limiting Instruction

Glancy testified on direct examination about the arrival of Waggoner and Tingler at his home as follows:

Q: What did you see as you looked out your door or your window of your home?
A: Two people approaching my front door.
Q: Were they on foot?
A: On foot. One of them brandishing a nickel plated side iron [sic].
Q: When you say brandishing, how did they have it?
A: Didn't point it at me. They were just waving it around.
Q: Who had the firearm?
A: The young man there.
Q: Are you referring to Mr. Waggoner?
A: That's correct. I asked him if he could please leave it in the vehicle. He said no, he had been just as satisfied to carry it. She offered to put it in her purse. He still kept it. Apparently they had some sort of a misunderstanding. And I allowed them in.

J.A. at 96-97. Glancy mentioned the nickel-plated pistol again while describing why he left his home and called the police. Glancy also made clear on direct examination that the nickel-plated pistol that he saw Waggoner brandishing as he arrived was different from the Tec 9 pistol that the police saw

4

Waggoner holding when they arrived. On cross-examination, Glancy admitted that he never found a nickel-plated pistol in his home.

Waggoner argues that the district court erred by not instructing the jury that it could consider Glancy's testimony only for proper purposes, and not as evidence of Waggoner's propensity to commit crimes or possess firearms. Federal Rule of Evidence 404(b) states, in relevant part:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident . . . .

FED. R. EVID. 404(b). We have held that if evidence is admitted under Rule 404(b), "the district court must 'clearly, simply, and correctly' instruct the jury as to the *specific* purpose for which they may consider the evidence." *United States v. Merriweather*, 78 F.3d 1070, 1077 (6th Cir. 1996) (quoting *United States v. Johnson*, 27 F.3d 1186, 1193 (6th Cir. 1994)). However, "[t]he duty to provide an instruction . . . arises only 'upon [the] request' of one of the parties." *United States v. Fraser*, 448 F.3d 833, 839 n.3 (6th Cir. 2006) (quoting FED. R. EVID. 105) (second alteration in original).

The government argues that Glancy's testimony does not raise any concerns because "'background' or 'res gestae' evidence does not implicate Rule 404(b)." *Martinez*, 430 F.3d at 335. Background evidence "consists of those other acts that are inextricably intertwined with the charged offense or those acts, the telling of which is necessary to complete the story of the charged offense." *United States v. Hardy*, 228 F.3d 745, 748 (6th Cir. 2000). More specifically:

> Proper background evidence has a causal, temporal or spatial connection with the charged offense. Typically, such evidence is a prelude to the charged offense, is directly probative of the charged offense, arises from the same events as the charged

5

offense, forms an integral part of a witness's testimony, or completes the story of the charged offense.

*Id.* Glancy's testimony that Waggoner brandished a nickel-plated pistol had a close temporal and spatial connection with the charged offenses and may have been helpful in explaining Glancy's version of events, such as why he left his home and why he called the police. However, it is not directly probative of the charged offense and it is unclear how necessary or "integral" mention of the nickel-plated pistol was to Glancy's testimony.

In any event, the question before us is not whether Glancy's testimony implicated Rule 404(b), but whether the district court committed plain error when instructing the jury. The district court recognized that "these other unrelated acts of possession of a firearm would be prejudicial to the defendant," J.A. at 37 (Motions Hearing), raising the need for some form of a limiting instruction. The district court's instructions to the jury included a charge on this point: "I want to emphasize that the defendant is only on trial for the particular crimes charged in the indictment. Your job is limited to deciding whether the government has proved the crimes charged." District Court Record Entry 32 at 15 (Jury Instructions). While examining similar circumstances, we have referred to a similar charge as "an appropriate limiting instruction." *United States v. Hughes*, 134 F. App'x. 72, 76 (6th Cir. 2005) (unpublished opinion). Accordingly, we believe that the district court's failure to give an additional instruction was, if error, hardly clear or obvious, and thus did not constitute plain error.

## B. Ineffective Assistance of Counsel

Waggoner next argues in his brief that his trial counsel was ineffective for failing to request a limiting instruction, failing to request a continuance in order to have Robin Tingler testify in

person, and failing to object to an invalid sentence. Ordinarily, we do not rule on ineffective-assistance-of-counsel claims raised on direct appeal because the record has not been sufficiently developed to review such claims. *See United States v. Wagner*, 382 F.3d 598, 615 (6th Cir. 2004). Recognizing this, Waggoner's appellate counsel withdrew this claim at oral argument. Accordingly, we decline to review Waggoner's ineffective-assistance claim.

## C. Sentencing

Because Waggoner did not raise any objections to his sentence in the district court, we review for plain error. *United States v. Barnett*, 398 F.3d 516, 525 (6th Cir.), *cert. dismissed*, --- U.S. ---, 126 S. Ct. 33 (2005).

### 1. Semiautomatic Assault Weapon Provision

#### a. Insufficient Evidence

The district court assigned Waggoner a heightened base offense level pursuant to Guideline § 2K2.1(a)(4)(B) because it concluded that the Tec 9 pistol was a semiautomatic assault weapon as defined by 18 U.S.C. § 921(a)(30) (2004). *See* U.S. SENTENCING GUIDELINES MANUAL (U.S.S.G.) § 2K2.1(a)(4)(B) (2005). However, we have held that this provision does not apply if the weapon was lawfully possessed on the date of the enactment of 18 U.S.C. § 921(a)(30). *United States v. O'Malley*, 332 F.3d 361, 363 (6th Cir. 2003). The government concedes that, because no evidence was presented on this issue, the district court committed plain error, and Waggoner is entitled to resentencing.

#### b. Applicability

Waggoner also argues that Guideline § 2K2.1(a)(4)(B) should not apply at all because he was sentenced after 18 U.S.C. § 921(a)(30) expired. At the time of Waggoner's sentencing, Guideline

7

§ 2K2.1(a)(4)(B) called for a base offense level of 20 in this case if "the offense involved a firearm described in . . . 18 U.S.C. § 921(a)(30)." U.S.S.G. § 2K2.1(a)(4)(B) (2005). On September 13, 2004, the semiautomatic-assault-weapon ban of the Public Safety and Recreational Firearms Use Protection Act expired, including the definitional provisions of 18 U.S.C. § 921(a)(30). Pub. L. No. 103-322, tit. XI, subtit. A, §110105, 108 Stat. 1796, 2000 (1994) (sunset provision). Waggoner possessed the Tec 9 pistol on April 7, 2004, before 18 U.S.C. § 921(a)(30) expired, but was sentenced on January 4, 2005, after it expired.

This argument was not raised below and, as explained above, will have no bearing on Waggoner's sentence unless the government shows that the Tec 9 pistol was not lawfully possessed on the date of the enactment of 18 U.S.C. § 921(a)(30). Moreover, Guideline § 2K2.1(a)(4)(B) has since been amended to remove any reference to 18 U.S.C. § 921(a)(30), *see* U.S.S.G. § 2K2.1(a)(4)(B) (2006), and it is unclear how this will affect Waggoner's resentencing, if at all. Accordingly, we leave these issues for the district court on remand to address in the first instance, should one or both parties wish to raise them.

### 2. *Booker*

Waggoner was sentenced on January 4, 2005, one week before the Supreme Court decided *United States v. Booker*, 543 U.S. 220 (2005). The district court applied the Sentencing Guidelines as if they were mandatory, which we have held amounts to a presumed plain error. *Barnett*, 398 F.3d at 525-29. As the government concedes, nothing in this case overcomes that presumption, and Waggoner is entitled to resentencing in light of *Booker*.

### III. CONCLUSION

Because the failure to give an additional jury instruction did not constitute plain error, we **AFFIRM** Waggoner's conviction. Because the district court applied a sentencing provision without proper evidentiary support and applied the Sentencing Guidelines as mandatory, we **VACATE** Waggoner's sentence and **REMAND** for resentencing.