*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206
File Name: 08a0398p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

UNITED STATES OF AMERICA,

>*Plaintiff-Appellee,*

No. 05-2465

*v.*

KEVIN DURON DAVIS,

>*Defendant-Appellant.*

Appeal from the United States District Court
for the Eastern District of Michigan at Bay City.
No. 02-20049—David M. Lawson, District Judge.

Argued: April 22, 2008

Decided and Filed: November 13, 2008

Before: GILMAN, ROGERS, and McKEAGUE, Circuit Judges.

_____

### COUNSEL

**ARGUED:** Winston Kelly Johnson, PORTER, WRIGHT, MORRIS & ARTHUR, Cincinnati, Ohio, for Appellant. Kathleen Moro Nesi, ASSISTANT UNITED STATES ATTORNEY, Detroit, Michigan, for Appellee. **ON BRIEF:** James B. Hadden, PORTER, WRIGHT, MORRIS & ARTHUR, Columbus, Ohio, for Appellant. Kathleen Moro Nesi, ASSISTANT UNITED STATES ATTORNEY, Detroit, Michigan, for Appellee.

ROGERS, J., delivered the opinion of the court, in which GILMAN, J., joined. McKEAGUE, J. (pp. 9-10), delivered a separate opinion concurring in the judgment.

_____

### OPINION

_____

ROGERS, Circuit Judge. Defendant Kevin Davis was convicted of distributing, and of conspiring to distribute, crack cocaine. He had sold crack cocaine to a government informant who had been directed to Davis by Davis's cousin. At trial, the district court admitted testimony concerning a prior drug transaction that similarly involved Davis, his cousin, and a third-party buyer. Davis challenges both his distribution and conspiracy convictions on appeal, arguing that evidence of the prior sale was inadmissible under Federal Rule of Evidence 404(b). Because the jury was not instructed properly on how it could use the testimony regarding the prior drug transaction, and because this error was not harmless with respect to the conspiracy conviction, we reverse the conspiracy conviction, and remand the case for further proceedings consistent with this opinion.

**I.**

On March 14, 2002, Davis allegedly sold 53.5 grams of crack cocaine to Pernell Hamlett, a paid informant for the Drug Enforcement Agency. Hamlett first met Davis at a party in November 2001, at which time Davis informed Hamlett that he sold crack cocaine. A few months later, in March 2002, Hamlett asked Davis's cousin, Leroy McIntosh, where he could obtain crack cocaine. McIntosh suggested that Hamlett might be able to make such a purchase from Davis. McIntosh subsequently confirmed to Hamlett that he had spoken to Davis and that Davis was willing to sell him 53.5 grams of crack for $3,150. Hamlett asked McIntosh to call Davis to set up the transaction, because Hamlett did not have Davis's telephone number. McIntosh obliged, calling Davis and telling him that Hamlett wished to go through with the deal. Hamlett also spoke to Davis during this call, but gave the phone back to McIntosh when Davis was unable to recall having met him. After McIntosh spoke with Davis for a few more minutes, Davis agreed to meet the two men with the drugs.

When Davis failed to arrive on schedule, McIntosh walked to a nearby pay-phone to inquire into his tardiness. Davis told McIntosh that he was still "cooking" the drugs and would be there shortly. While waiting for Davis to arrive, McIntosh, Hamlett, and a third man, Marvin Phillips, went outside to Hamlett's van and smoked marijuana. When Davis eventually showed up, the men called out for him to join them. The drug transaction then occurred in the van: Davis gave Hamlett the 53.5 grams of crack cocaine and Hamlett paid Davis the $3,150 in cash. Law enforcement officials were able to overhear the conversation in the van through a hidden transmitter worn by Hamlett. After the sale, Hamlett gave McIntosh $50 "for setting up the deal."

Davis and McIntosh were arrested shortly thereafter and indicted on charges of conspiring to distribute and possess with intent to distribute 50 grams or more of crack cocaine in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(A)(iii), and of distributing and aiding and abetting in the distribution of the same, in violation of the above provisions and 18 U.S.C. § 2. McIntosh pled guilty to the conspiracy charge and agreed to testify against Davis as part of a plea agreement.

At Davis's trial, McIntosh provided testimony concerning a similarly-structured drug transaction involving Davis, McIntosh, and a third-party buyer. At the start of the trial, the district court made a preliminary assessment regarding the Rule 404(b) evidence. The government explained that McIntosh would testify about other drug transactions, and the following exchange occurred between the court and the prosecutor:

> Prosecutor: The chain of distribution was the same in the other circumstances as it is here and, therefore, that was part of the preparation for this transaction, to employ Mr. McIntosh in this manner. So the jury would be aware that this is not an incident that just came out of the blue, that there was a pattern of this sort of conduct that had gone on prior to this, albeit with respect to marijuana, but, nonetheless, using Mr. McIntosh as basically a contact person to locate customers to contact him, perhaps screen them out to some degree and then facilitate the transaction with drugs.
>
> Court: So this was part of a pattern or method of operation?
>
> Prosecutor: Yes, modus operandi if you want to use that terminology.
>
> Court: I'm not trying to suggest terminology, but—so you're suggesting these other transactions fit into a pattern, and this one is somewhat of a template or followed along in the form that Mr. Davis utilized in the past with respect to Mr. McIntosh?
>
> Prosecutor: Yes.

Following a response from defense counsel, the court preliminarily ruled that the evidence could be admitted as proof "that there is a manner of operation and that this conspiracy fit[s] into the pattern of operation." The court agreed to make a final determination on admissibility after allowing the parties to examine and cross-examine McIntosh outside the presence of the jury once McIntosh was called to the stand.

During the preliminary questioning, McIntosh offered testimony regarding (1) conversations with Davis about having crack cocaine for sale, (2) McIntosh's purchase of marijuana for personal use from Davis, and (3) an earlier transaction in which McIntosh helped Davis sell a pound of marijuana to a third party. With respect to the third-party marijuana transaction, McIntosh explained that "[s]omebody came over to my house and I went behind my uncle's house and talked to [Davis] about it, and he went to his house and got it. And I sold it—I gave it to [the buyer] and the man gave [Davis] the money." McIntosh received no money in that transaction, but he acknowledged that he "intend[ed] to make some money" from the sale.

The court determined that the only admissible evidence under Rule 404(b) was the evidence related to the prior sale of marijuana. Over Davis's objection, the court explained that the transaction "falls within the pattern evidence to show that there was a series of — or perhaps the first in a series — of events, and that the defendant had a plan to use Mr. McIntosh as an intermediary, and that that evidence is relevant. It's offered for a proper purpose, and it is not more prejudicial than probative."

McIntosh then testified in front of the jury as follows:

A guy came over to my house looking for some weed, and I went around the corner to my uncle's house, my uncle Jeffrey, and I talked to [Davis] about it. And he went to his house and got it. He came back with it and I gave it to the guy, the guy gave me the money, they both went separate.

The court did not instruct the jury following McIntosh's testimony about the proper use of the Rule 404(b) evidence, but Davis did not request such an instruction. Instead, the jury was instructed when the case was submitted to it. According to the trial transcript, the court incorporated the Government's proposed Rule 404(b) instruction. That instruction was as follows:

You have heard the testimony that the defendant committed some act other than the ones charged in the indictment. You cannot consider this testimony as direct evidence that the defendant committed the crimes that he is on trial for now. Instead, you can only consider it in deciding whether the other act was committed in preparation for the offenses he is on trial for, or as part of the pattern of related conduct. Do not consider it for any other purpose.

The jury was thus instructed that the evidence of the marijuana transaction was admissible under Rule 404(b) because it shows either "preparation" or a "pattern of related conduct."

The jury found Davis guilty of both charges. The district court subsequently sentenced Davis to 121 months of imprisonment on each count, with those sentences to run concurrently. This was only one month more than the 120-month mandatory minimum sentence applicable to Davis based on the amount of crack cocaine involved. *See* 21 U.S.C. § 841(b)(1)(A).

Davis then appealed his convictions to this court. While that appeal was pending, Davis asked that his sentence be vacated and that his case be remanded to the district court for resentencing in light of the Supreme Court's recent opinion in *United States v. Booker*, 543 U.S. 220 (2005). After this court granted that request, the district court reimposed an identical sentence.

## II.

On appeal, Davis presents three claims of error: (1) that evidence of the prior marijuana transaction was improperly admitted, (2) that there was insufficient evidence to support a conviction for conspiracy, and (3) that his 121 month sentence was unreasonable. Although we reverse and remand as to the conspiracy conviction on the first issue, we must first address the sufficiency of the evidence claim, as a reversal on that ground would preclude retrial. *See Patterson v. Haskins*, 470 F.3d 645, 651-52 (6th Cir. 2006).

## A.  Sufficiency of the Evidence of Conspiracy

There was sufficient evidence at trial to support Davis's conviction for conspiring to distribute and possess with intent to distribute crack cocaine.[1] Viewing the evidence in the light most favorable to the government, a rational jury could have found the essential elements of that crime beyond a reasonable doubt. *See Jackson v. Virginia*, 443 U.S. 307, 319 (1979).

In attacking his conviction on sufficiency grounds, Davis focuses on the requirement that there must have been a conspiracy between him and McIntosh. To prove the existence of such a drug conspiracy, the Government was required to establish: (1) an agreement to distribute, or to possess with intent to distribute, drugs; (2) knowledge and intent to join the conspiracy; and (3) participation in the conspiracy. *United States v. Lopez-Medina*, 461 F.3d 724, 750 (6th Cir. 2006). Davis argues that the evidence offered at trial does not support that he and McIntosh intentionally agreed to work together to distribute crack cocaine. There could be no such agreement, Davis contends, because McIntosh participated in the transaction only to help Hamlett locate crack cocaine, and not to assist Davis in the distribution of drugs.

Although the evidence of a conspiracy between Davis and McIntosh is not overwhelming, it was sufficient to sustain the jury's verdict. The jury could reasonably infer that McIntosh was conspiring with Davis to distribute crack cocaine, and thus was not "merely associated" with the sale. McIntosh was the primary figure responsible for setting up the transaction between Davis and Hamlett. It was McIntosh who obtained a price from Davis, who then called Davis and arranged a time and place for the sale, and who left his home to again call Davis when Davis did not arrive on schedule. Essentially every detail was negotiated between Davis and McIntosh. Given Hamlett's minimal role and the lengths that McIntosh went to in arranging the sale, a jury could conclude that, at the very least, McIntosh and Davis were acting pursuant to a tacit agreement to distribute crack cocaine. Moreover, the record suggests a potential motive for McIntosh to work with Davis in this manner. Promoting drug sales by Davis would not only help Davis, McIntosh's relative, but it might also lead to monetary compensation for McIntosh himself. According to Hamlett, he paid McIntosh $50 for arranging the sale with Davis. The jury could have inferred that such payments are frequently made to intermediaries in drug transactions, and that McIntosh accordingly hoped to profit by setting up the sale.

McIntosh's statements that he had not entered into a formal agreement to sell crack cocaine with Davis do not preclude a finding that there was sufficient evidence of a conspiracy. In response to questioning by Davis's attorney, McIntosh testified, for example, that he and Davis "didn't have [any] conversations saying 'I agree with you to sell crack and all that.'" This statement does not, however, deny that there was an informal understanding between the cousins. As this court has observed, a conspiratorial agreement requires "only a tacit understanding among the participants." *United States v. Hamilton*, 263 F.3d 645, 652 (6th Cir. 2001). Moreover, even if some of McIntosh's statements are taken to deny the existence of even an unspoken understanding, a jury

---

[1]Davis does not dispute that there was sufficient evidence to support his conviction for the distribution of crack cocaine.

could reasonably decide to give that testimony little credit. Such a reading is contrary to admissions made elsewhere in McIntosh's testimony that he knew that his conduct "was to help [Davis] sell drugs" and that "that was the agreement, that [McIntosh] would help [Davis] by making a phone call." In addition to being inconsistent with these admissions, such testimony would also be contradicted by McIntosh's testimony that he pled guilty to this identical charge. While not admissible as substantive evidence of Davis's guilt, McIntosh's guilty plea renders less credible a claim that he and Davis had no understanding or common goal. *See United States v. Martinez*, 430 F.3d 317, 337 (6th Cir. 2005). Further, McIntosh had reason to downplay his involvement in the transaction. Such testimony would be less incriminating both for McIntosh, who had yet to be sentenced, and for his cousin.

## B. Admissibility of the Prior Bad Acts Evidence

The prior act evidence was not properly admitted in this case.

In *United States v. Merriweather*, this court provided its most elaborate explanation of the process for admitting evidence pursuant to Rule 404(b). In *Merriweather* we stated:

> Upon objection by the defendant, the proponent of the evidence, usually the government, should be required to identify the *specific* purpose or purposes for which the government offers the evidence of "other crimes, wrongs, or acts." By so requiring, we do not mandate hypertechnicality. It is true that whether 404(b) evidence is admissible for a particular purpose will sometimes be unclear until late in the trial because whether a fact is "in issue" often depends on the defendant's theory and the proofs as they develop. Nevertheless, the government's purpose in introducing the evidence must be to prove a fact that the defendant has placed, or conceivably will place, in issue, or a fact that the statutory elements obligate the government to prove.
>
> After requiring the proponent to identify the specific purpose for which the evidence is offered, the district court must determine whether the identified purpose, whether to prove *motive* or *intent* or *identity* [or] some other purpose, is "material"; that is, whether it is "in issue" in the case. If the court finds it is, the court must *then* determine, before admitting the other acts evidence, whether the probative value of the evidence is substantially outweighed by the danger of unfair prejudice under Rule 403. If the evidence satisfies Rule 403, then, after receiving the evidence, the district court must clearly, simply, and correctly instruct the jury as to the *specific* purpose for which they may consider the evidence.

78 F.3d 1070, 1076-77 (6th Cir. 1996) (internal quotation marks omitted). *Merriweather* does not impose "strict, inflexible temporal or sequential mandates upon the district courts." *United States v. Miller*, 115 F.3d 361, 366 (6th Cir. 1997).[2]

In this case, Davis objected to the admission of the prior act testimony, and the objection was overruled. The district court later instructed the jury along the very lines that had served as the basis for overruling the objection. At neither point did the district court clearly determine an appropriate basis for admitting the evidence. It is proper for us to look at the limiting instructions when we review the admission of such evidence. *See United States v. Bell*, 516 F.3d 432, 442 (6th Cir. 2008)

---

[2]In particular, a specific instruction may not be necessary if such an instruction is not requested. *See United States v. Cobbs*, 233 F. App'x 524, 537-39 (6th Cir. 2007) (upholding of conviction when defendant failed to request limiting instruction under 404(b)); *United States v. Waggoner*, 207 F. App'x 576, 579-80 (6th Cir. 2006) (same). That issue, however, is not before us.

(explaining that "[t]he district court found and *instructed the jury* that" the 404(b) evidence was admissible for two purposes, but "find[ing] this instruction to be erroneous") (emphasis added). Indeed, the jury instructions provide the only record evidence of the very thing that we are reviewing—whether the jury considered the other-act evidence for an improper purpose.

The jury instruction in this case stated "you can only consider [the evidence] in deciding whether the other act was committed in preparation for the offenses he is on trial for, or as part of the pattern of related conduct." The jury instruction refers to two possible purposes, "preparation" and "pattern of related conduct."

First, it was clearly error to instruct the jury to consider the bad acts testimony in deciding whether the marijuana transaction was committed in preparation for the instant offense. Preparation was not at issue at here, where "[t]here was no suggestion . . . in the government's theory of the case that the other acts were preliminary steps necessary to the success of a greater, overall criminal enterprise." *See United States v. Johnson*, 27 F.3d 1186, 1194 (6th Cir. 1994). Indeed, it is difficult to see how the perpetration of the first sale was necessary for the completion of the second. The jury should not have been permitted to consider the evidence with respect to preparation for the instant offense.

Second, Rule 404(b) does not include "pattern of related conduct" as one of the permissible purposes for admitting evidence of prior acts. Pattern instead is a way of demonstrating one of the purposes permissible under 404(b), usually to show identity. *Modus operandi* was part of the Government's initial explanation for offering the evidence, and "pattern" and "*modus operandi*" are often used interchangeably. *See, e.g.*, *United States v. Perry*, 438 F.3d 642, 648 (6th Cir. 2006) (admitting evidence of prior acts because "two crimes of sufficient distinctive similarity can create a pattern or modus operandi"). No one has argued that the pattern evidence in this case was introduced to show identity. There is no question that Davis is the person who interacted with McIntosh and Hamlett in this case.

It is possible that the Government could have introduced the evidence at issue to show intent. That is, pattern evidence could be admissible for the proper purpose of establishing that Davis and McIntosh intentionally worked together to distribute crack cocaine, and not simply to prove Davis's character. Although Rule 404(b) prohibits the admission of a defendant's "other crimes, wrongs, or acts" for purposes of proving bad character and conformity therewith, it explicitly permits the admission of such evidence to establish intent. Intent was a relevant issue in this case, where Davis was charged with the specific intent offenses of intentionally distributing crack cocaine and of conspiring to do the same. *See United States v. Myers*, 102 F.3d 227, 234 (6th Cir. 1996). To obtain a conviction on the former charge, the Government was required to prove that Davis knowingly and intentionally distributed crack cocaine. *See* 21 U.S.C. § 841(a)(1). The latter charge necessitated, in part, a similar showing that Davis and McIntosh had knowingly and intentionally entered into an agreement to distribute that drug. *See United States v. Wheaton*, 517 F.3d 350, 363-64 (6th Cir. 2008). Moreover, both at trial and before this court, Davis denied the existence of any such intentional arrangement.[3] Indeed the precise intent with which Davis and McIntosh acted is one of the primary issues on appeal. Where, as here,

> there is thrust upon the government, either by virtue of the defense raised by the defendant or by virtue of the elements of the crime charged, the affirmative duty to prove that the underlying prohibited act was done with a specific criminal intent, other acts evidence may be introduced under Rule 404(b).

---

[3]In fact, at trial Davis also denied even selling the crack cocaine at issue, claiming instead that the informant purchased the drug from Phillips, who had also been in the van at the time of the sale. On appeal, Davis concedes that he sold the crack cocaine, but disputes that he conspired with McIntosh to do so.

*Johnson*, 27 F.3d at 1192.

In this case, however, an intent basis for admission of the prior act evidence was not adequately identified or conveyed to the jury. Using pattern to show intent is different from using it to show propensity, but it is close enough that it increases the importance of a clear instruction. Where a district court instructs the jury on the proper use of Rule 404(b) evidence, that instruction should be "clear[], simpl[e], and correct[]." *Johnson*, 27 F.3d at 1193.

It is true that defendant's counsel did not separately object to the instruction at the time it was given. That fact does not limit our review to plain error on the facts of this case. The key rationale for the use of the plain error standard is that the underlying issues were not brought to the attention of the lower court. As the Supreme Court has explained, "[n]o procedural principle is more familiar to this Court than that a constitutional right, or a right of any other sort, may be forfeited in criminal as well as civil cases by the failure to make timely assertion of the right before a tribunal having jurisdiction to determine it." *United States v. Olano*, 507 U.S. 725, 731 (1993) (internal quotation marks omitted).

While this court has previously applied plain error review to a jury instruction not separately objected to, that case does not control this one. *See United States v. Fraser*, 448 F.3d 833, 841-42 (6th Cir. 2006). In the instant case defendant objected to the admission of the evidence for the purposes identified by the district court (preparation and "pattern"), and the later instruction referred to precisely those purposes. This is different from the situation in *Fraser*, where we applied plain error review to an instruction that was not separately objected to and that went well beyond what had previously been determined as the purpose of the evidence at the time of admission. The 404(b) evidence in *Fraser* was initially admitted to show "intent and modus operandi." *Id.* at 837. However, the court later instructed the jury that it could consider the evidence to prove "motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident." *Id.* at 841. This court noted the error in the "overly broad instruction," but reviewed the error under the plain error standard because the defendant did not object at trial. *Id.* Plain error review was proper in *Fraser* because the defendant did not ever call the errors in the jury instructions to the attention of the trial court. In the instant case, Davis had already objected to the admission of the evidence for the purposes stated by the government. Plain error review is not appropriate because the district court had reason to be aware of the problem.

In short, in light of the failure to identify intent as a purpose for admitting the prior act evidence, and the failure to convey that distinct purpose to the jury, it was not proper to admit the prior act testimony.

## C. Harmless Error Review

The next question is whether the improper admission of the Rule 404(b) evidence was nevertheless harmless. In this context, the case must be remanded for a new trial unless the other evidence of Davis's guilt was "overwhelming." In *United States v. Haywood*, we explained that an error in admitting evidence is presumed to be reversible unless we conclude "with fair assurance, after pondering all that happened without stripping the erroneous action from the whole, that the judgment was not substantially swayed by error." 280 F.3d 715, 724 (6th Cir. 2002) (quoting *Kotteakos v. United States*, 328 U.S. 750, 765 (1946)).

The error in admitting the evidence of the prior marijuana transaction was harmless with respect to the distribution charge against Davis, but not harmless with respect to the conspiracy charge. As to the distribution charge, the evidence of Davis's guilt was overwhelming. The Government presented the testimony of three eyewitnesses to the drug transaction. Those eyewitness accounts were corroborated by law enforcement officials in the form of surveillance

evidence and direct testimony from officers who listened to the drug deal through a wiretap. Moreover, because the prior marijuana transaction was relevant only to the conspiracy charge (in that it purported to show a prior drug-dealing relationship between McIntosh and Davis), it is unlikely that it substantially swayed the jury in deciding the distribution count.

The same conclusion does not apply to the conspiracy conviction. The evidence of the marijuana transaction was the strongest evidence to support Davis's conviction on the conspiracy count because it created an inference that he and McIntosh had an agreement by which McIntosh agreed to serve as a middleman for Davis's drug sales. Because the evidence of the prior drug sale provides the strongest suggestion of an agreement to distribute between the two men, it was highly likely to sway the jury.

The jury instructions compounded this problem by informing the jury that it could consider the earlier marijuana sale as preparation for the crack cocaine sale or as part of a pattern of related conduct, two impermissible purposes for the evidence. Absent overwhelming evidence of Davis's guilt on the conspiracy charge, the lack of clear articulation by the district court of the purposes for which the jury could consider the marijuana transaction cannot be considered harmless.

Although the sentence for the conspiracy conviction was to run concurrently with the sentence for the distribution conviction, we vacate the conspiracy sentence because "adverse collateral consequences" may flow from that sentence. *United States v. Jones*, 533 F.2d 1387, 1390 (6th Cir. 1976); *see also Benton v. Maryland*, 395 U.S. 784, 790-91 (1969); *cf. Cramer v. Fahner*, 683 F.2d 1376, 1381 (7th Cir. 1982) (court should review concurrent sentence unless "there is no substantial possibility that the unreviewed conviction will adversely affect the defendant's right to parole or expose him to a substantial risk of adverse collateral consequences" (quotation omitted)).

We therefore reverse the conspiracy conviction. Because the distribution and conspiracy counts were grouped together for sentencing purposes, Davis must be resentenced. *See United States v. Driver*, 535 F.3d 424, 433 (6th Cir. 2008); *United States v. Fowler*, 535 F.3d 408, 423 (6th Cir. 2008). We therefore need not reach Davis's argument that his sentence was unreasonable.

**III.**

For the foregoing reasons, we reverse Davis's conspiracy conviction, but affirm his distribution conviction, and remand the case for further proceedings consistent with this opinion.

---

**CONCURRING IN THE JUDGMENT**

---

McKEAGUE, Circuit Judge, concurring. I concur in the judgment, but write separately to explain that I likely would have voted to affirm Davis's drug-conspiracy conviction had the issue of identity been raised on appeal. The Government did not argue on appeal that the modus-operandi evidence was properly admitted in order to show, among other things, the identity of the person who sold cocaine to Hamlett. Given the Government's strategic decision to argue that the district court was justified in admitting the evidence to show intent, but to forgo the issue of identity, I concur in reversing the conspiracy conviction.

**I**

The district court instructed the jury that it could consider the testimony about the prior uncharged drug sale as part of a pattern of related conduct. Evidence of pattern, also referred to as modus-operandi evidence, can be used to prove identity. The rationale for permitting the evidence rests upon the idea that if the method of operation employed in all of the crimes is essentially identical and sufficiently unique, it can be said to be the "signature" of the defendant. "[W]hen the issue is one related solely to identity, this Court has overwhelmingly approved the admission of 'other acts' evidence." *United States v. Perry*, 438 F.3d 642, 648 (6th Cir.), *cert. denied*, 547 U.S. 1139 (2006).

To qualify as modus-operandi evidence, the similarity between the prior crime and the charged offense must be striking and the method must amount to a signature. *Id.* However, "it is not necessary . . . that the crimes be identical in every detail." *Id.* (citation and brackets omitted). Moreover, "standard conduct, although not particularly unusual by itself, may, in combination, present an unusual and distinctive pattern constituting a 'signature.'" *United States v. Mack*, 258 F.3d 548, 554 (6th Cir. 2001). In addition to the distinctiveness of the facts or fact pattern, the court should also consider "the distance between the crimes in space and in time," *United States v. Oman*, 427 F.3d 1070, 1075 (8th Cir. 2005) (citation omitted) (finding that seven years between bank robberies was sufficiently close in time to admit evidence); *see also United States v. Price*, 516 F.3d 597, 603-04 (7th Cir.) (finding significant that two bank robberies occurred within five months of and under six miles from each other), *cert. denied*, — S. Ct. —, 2008 WL 2847166 (U.S. Oct. 6, 2008) (No. 08-5383), as well as the identities of persons who were involved in the crimes, *United States v. Phillips*, 599 F.2d 134, 137 (6th Cir. 1979) ("The fact that a criminal defendant previously participated in a series of the same crimes with a particular confederate may, in some instances, raise a fair inference identifying the defendant as the confederate's unknown partner."). "In evaluating the probative value of modus operandi evidence, [courts] focus on the commonalities between the charged crime and the other act—not on their differences." *Price*, 516 F.3d at 604 (citation omitted).

**II**

Contrary to the majority's suggestion, *see* maj. op. at 6, there was a question at trial of whether Davis sold cocaine to Hamlett. Davis placed identity at issue below because he argued that, although he was present when the crack cocaine sale took place, he was not the person who sold the drugs to Hamlett. (Whether he conceded on appeal that he was the one who sold the cocaine is, of course, of no moment to the question of whether the district court abused its discretion in admitting the evidence below, where it is uncontroverted that Davis *did not* concede that he sold the drugs.)

The marijuana and crack cocaine transactions shared the following material features: (a) Davis acted, in effect, as a wholesaler of illegal drugs; (b) his cousin, McIntosh, acted as a broker or middleman; (c) McIntosh found (or was approached) by each buyer; (d) McIntosh made contact with Davis on behalf of each buyer; and (e) McIntosh arranged to meet to complete the sale. The sales involved the same two persons acting in the same relative capacities. In addition, the sales were relatively close in time (one or two months) and proximity (same city).

It is also interesting to note that Phillips, another cousin of McIntosh and Davis, was *not* involved in the marijuana transaction. This is important because it appears that one of the defense's theories was that Phillips was involved in the crack cocaine sale and that Davis was being set up as the fall guy. The defense suggested that McIntosh was covering up Phillips's involvement in the sale because McIntosh was closer to Phillips than he was to Davis. Yet, by showing that Davis worked with McIntosh on a prior drug sale, that sale provides some evidentiary basis to infer that Davis, and not Phillips, again acted as a wholesaler on another drug sale involving McIntosh.

Given the similar features of the two drug sales, their proximity in time and in place, and the omission of Phillips, the testimony about the marijuana sale satisfied the requirements for modus-operandi evidence and could have been properly used to show identity. Yet, again, given the Government's decision not to pursue identity on appeal, but only intent, I agree that the drug-conspiracy conviction should be reversed.